THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. DARRYL CANNON, Defendant-Appellant.

First District (4th Division)   No. 1—94—4409

Opinion filed November 20, 1997.—Rehearing denied December 24, 1997.

Michael J. Pelletier and Frank W. Ralph, both of State Appellate Defender's Office, of Chicago, for appellant.

Richard A. Devine, State's Attorney, of Chicago (Renee Goldfarb, Theodore Burtzos, and Christine Cook, Assistant State's Attorneys, of counsel), for the People.

PRESIDING JUSTICE WOLFSON delivered the opinion of the court:

In this murder case Darryl Cannon is asking for the opportunity to prove his confession was the product of torture by police officers from Area 2 Headquarters in Chicago.

Cannon was tried in 1984 for his involvement in the October 26, 1983, murder of Darren Ross. He had moved to suppress his confession, but the motion was denied. On appeal from that conviction, the denial of Cannon's motion to suppress was affirmed, but his case was remanded to the trial court for a hearing on the prosecutor's use of peremptory challenges to exclude black jurors. See *People v. Cannon*, 150 Ill. App. 3d 1009, 502 N.E.2d 345 (1986).

After holding a *Batson* hearing, the trial court ordered a new trial. Again, Cannon moved to suppress his confession. Among other things, he said he could prove other suspects had been tortured by Area 2 police officers to obtain confessions. Two trial court judges refused to revisit the question of whether Cannon's confession was voluntarily made.

On retrial in 1994, Cannon again was found guilty of murder. He was sentenced to natural life in prison. He raises several issues in this appeal, but we decide only one at this time: he should have been given a second opportunity to suppress his confession. For that reason, we vacate the defendant's conviction and sentence, and we remand this cause to the trial court for a new hearing on the voluntariness of Cannon's confession.

## BACKGROUND

For an understanding of how we have reached this point, we step

back 14 years, to October 26, 1983. At about 1 p.m. Darren Ross and Kenneth Steele, two drug dealers, encountered Tyrone and A.D. Mc-Christian at the corner of 79th Street and Essex Avenue in Chicago. According to Steele, Tyrone approached Ross and whispered something in his ear. Then A.D. drove off in his blue and white 1975 Buick. Ross walked away, leaving Steele behind.

Later that day, at about 3:45 p.m., Ross's body was found near the Altgeld Gardens housing project. Ross had been shot in the head and his body dumped in an isolated grassy area behind the housing project.

In the course of the investigation of Ross's murder, the police spoke with Steele, who told the police about the encounter with the McChristians. Later, the police found a 1975 Buick, which was registered to an alias known to be used by A.D. McChristian. The car had bloodstains that matched Ross's blood type.

A few days later the police located Tyrone McChristian, who implicated Cannon. The police obtained a warrant for Cannon's arrest. Cannon was arrested at his home at about 7 a.m. on November 2, 1983. After his arrest, Cannon made statements admitting that he had been driving McChristian's car when A.D. McChristian shot Ross.

In a pretrial motion before his first trial, Cannon moved to suppress his postarrest statements and admissions to police, claiming that his statements had been the product of police torture. Cannon claimed that one of the arresting police officers placed a shotgun in his mouth while asking him questions. When Cannon refused to answer, the officer pulled the trigger. Though the gun was unloaded, the officer showed Cannon that he had shotgun shells in his hand and repeatedly made motions as if he were loading the gun. Cannon also claimed one of the officers struck him in the knee with a flashlight and another officer applied an electric cattle prod to his exposed genitalia. See *Cannon*, 150 Ill. App. 3d at 1014.

A suppression hearing was held before the first trial, which was presided over by Judge Thomas Maloney. The motion to suppress was denied based on the trial judge's finding that the State's evidence (the police officers' denials) outweighed Cannon's uncorroborated claims of torture. It was noted that Cannon had never complained to anyone at the police station about the torture and there was no physical evidence of injury. Judge Maloney also noted that Cannon was not credible because Cannon testified that the cattle prod had been in the police car's glove compartment and the judge did not believe that cattle prods were small enough to fit into the glove compartment of a car.

Cannon went to trial on April 6, 1984. He was found guilty of murder. In an appeal from that judgment, the trial court's decision to deny the motion to suppress was upheld. The case was remanded, however, for a *Batson* hearing. Later, based on the trial court's finding that a *Batson* violation had occurred, a new trial was ordered.

In a pretrial motion before the second trial, Cannon asked that his motion to suppress be reconsidered in light of "new evidence" to support his claim that his admissions had been coerced. This "new evidence" included: (1) a police log indicating that Cannon's arresting officers signed out a shotgun on the day of his arrest, proving that these police officers perjured themselves at the suppression hearing when they denied they had a shotgun in their possession at the time of Cannon's arrest; (2) testimony by Sgt. Byrne and Detective Dignan at a 1987 deposition in a related civil action; (3) photos taken by the Office of Professional Standards (OPS) of a site where Cannon claimed he had been tortured; (4) testimony of approximately 16 arrestees who filed charges with OPS claiming they had been tortured by some of the same police officers at Area 2; and (5) evidence that cattle prods small enough to fit in the glove compartment of a car existed in 1983. None of this evidence, he said, was available at his first trial.

The request for a new suppression hearing was heard first by Judge Mannion. After Judge Mannion denied the request, he granted the defense motion for his recusal. He had been a detective at Area 2. The case was transferred to Judge Morrissey and a new suppression motion was filed. Judge Morrissey heard argument on the motion but refused to hold a new suppression hearing to receive the evidence being offered. He ruled there was nothing "new" being offered.

Judge Morrissey also granted the State's pretrial motion *in limine* to bar any reference to or allegations of mistreatment of prisoners by detectives assigned to Area 2. The judge ruled that evidence was inadmissible because it was an attempt by Cannon to show the detectives' characters and propensity to commit wrongdoing by proof of other crimes or bad acts.

The case proceeded to trial on October 24, 1994. Cannon testified he had been driving A.D.'s car when A.D. shot Ross. He denied, however, that he provided the gun to A.D. and denied knowing that A.D. intended to shoot Ross. Cannon admitted that he gave a written statement to Officer McWeeny and an assistant State's Attorney (ASA) after he was arrested. In this statement, Cannon said he gave A.D. the gun A.D. used to shoot Ross. Cannon also said in the statement he had been aware that A.D. was going to shoot Ross. Cannon testified he told the ASA these things because Officers Dignan, Byrne, and Grunhard tortured him and threatened more torture if he did not implicate himself.

Cannon testified that the three officers took him to an isolated area on the south side of Chicago. At this remote location, Dignan terrorized Cannon by pretending to load a shotgun, placing the gun in Cannon's mouth, and pulling the trigger. This happened several times. Next, Byrne stood on the car bumper and tried to lift Cannon by the handcuffs while Cannon's hands were cuffed behind his back. Finally, Byrne used a cattle prod on Cannon's exposed genitalia and, later, touched the cattle prod to Cannon's mouth.

Cannon was not allowed to present testimony of 28 other arrestees who claimed to have been similarly tortured at Area 2, 16 of them by some of the same officers involved in this case. After the defense rested its case at trial, Cannon's counsel made an offer of proof, stating that the defense, if allowed, would have presented evidence of systematic torture at Area 2, including: (1) testimony of Alphonso Pinex, who would have said that he had been beaten by Mc-Weeny and Dignan on February 9, 1982; (2) testimony of Lee Holmes that he was "bagged" (suffocated by having a plastic bag placed over his head) and beaten by Byrne and Dignan on September 10, 1982; (3) the court-reported testimony of Leonard Hinton that he was beaten and shocked in the testicles by these officers 23 days after Cannon's arrest; (4) the testimony of Alonzo Smith that he was "bagged" and beaten by Byrne and Dignan on January 21, 1983; (5) the testimony of Ronny Bullock that he was "harassed" by Byrne on September 2, 1983; (6) the testimony of Reginald Mahaffey that he was "bagged," beaten with a flashlight, and kicked by Byrne and Grunhard; (7) the testimony of David Bates that he was "bagged" and beaten by Byrne, Dignan, and Grunhard on October 28, 1983; (8) the testimony of Gregory Banks that he was "bagged" and beaten and had a gun held in his mouth by Byrne, Dignan, and Grunhard on October 29, 1983; (9) the testimony of Lovert Jones that he was "bagged," beaten and kicked by Byrne on January 28, 1984; (10) the testimony of Stanley Howard that he was "bagged" and beaten by Byrne on November 3, 1984; and (11) the testimony of Jesse Winston that he was "the victim of a hanging" by Byrne, Grunhard, and others.

After the jury was instructed, Cannon again was found guilty of murder on an accountability theory. He was sentenced to natural life in prison.

Now on appeal from that judgment, Cannon contends that when he was retried he should have been granted a new suppression hearing. Cannon also claims the court prevented him from presenting his defense at trial when the judge ruled inadmissible evidence that others had been tortured by the same police officers involved in his arrest. Defendant contends, too, that the results of investigations of

Area 2 police officers by the Chicago police department OPS should have been available to him in discovery.

As additional trial errors, Cannon contends: (1) the trial court should not have allowed the State to impeach him with a 1971 conviction for murder; (2) he was denied due process because the court excluded evidence that A.D. McChristian made an admission to Jeff Fort that Cannon had been unaware that A.D. McChristian was going to shoot Ross; (3) cumulative errors denied Cannon a fair trial; (4) the trial court denied Cannon the opportunity to establish a *prima facie* case of discrimination in jury selection; and (5) it was error to convict Cannon on two counts of murder when only one murder took place.

DECISION

■ No citation of authority is required for the proposition that in a civilized society torture by police officers is an unacceptable means of obtaining confessions from suspects. The use of a defendant's coerced confession as substantive evidence of his guilt never is harmless error. *People v. Wilson*, 116 Ill. 2d 29, 41, 506 N.E.2d 571 (1987).

When a defendant challenges the admissibility of his confession, the State has the burden of establishing by a preponderance of the evidence the confession was voluntarily made. *People v. Caballero*, 102 Ill. 2d 23, 33, 464 N.E.2d 223 (1984). It is the trial court's duty to resolve conflicting evidence and determine the credibility of the witnesses. *People v. Jones*, 184 Ill. App. 3d 412, 425, 541 N.E.2d 132 (1989). The trial court's factual determinations will not be disturbed on appeal unless they were against the manifest weight of the evidence. *People v. Bernasco*, 138 Ill. 2d 349, 351, 562 N.E.2d 958 (1990).

■ Here, in 1984, then-Judge Maloney rejected Cannon's account of events leading to his confession and accepted the testimony given by police officers. Ordinarily, that would be the end of the matter, even though a new trial later was granted on another issue. Principles of collateral estoppel would bar relitigation of a pretrial ruling on a motion to suppress. *People v. Enis*, 163 Ill. 2d 367, 386, 645 N.E.2d 856 (1994). This, however, is no ordinary case.

What is different about it? First, it involves a ruling by Thomas Maloney, a judge convicted of accepting bribes in murder cases. See *Bracy v. Gramley*, 520 U.S. 899, 138 L. Ed. 2d 97, 117 S. Ct. 1793 (1997). Second, the defense contends it stands ready to prove that the officers who obtained Cannon's confession regularly used torture as a technique for persuading suspects to confess. Third, the defense says it has important evidence that was not available at the time of the 1984 hearing.

These contentions bring us to the exceptions that accompany the general rule that bars relitigation of a decided motion. There are two separate established exceptions: new evidence that would have been pertinent to the trial court's rulings and "special circumstances" that would warrant relitigation of the motion to suppress. *People v. Enis*, 163 Ill. 2d at 387; *People v. Holland*, 56 Ill. 2d 318, 321-22, 307 N.E.2d 380 (1974).

■ The defendant says he can present evidence that the police officers who questioned him systematically tortured other suspects to obtain confessions at or near the time he was questioned. If he can deliver on that offer, the trial court should consider the evidence. It fits the definition of relevance: evidence that makes the existence of any fact of consequence more or less probable. *People v. Lewis*, 165 Ill. 2d 305, 329, 651 N.E.2d 72 (1995).

As the trial judge pointed out, evidence of other bad acts is not admissible to prove a propensity to commit those acts. But they are admissible for any other relevant purpose. *People v. Bartall*, 98 Ill. 2d 294, 312-14, 456 N.E.2d 59 (1983).

Here, evidence of other acts of brutality to obtain confessions could serve two purposes: First, it might prove intent, plan, motive, and a course of conduct of the officers—all relevant to Cannon's claim he was tortured. See *Wilson v. City of Chicago*, 6 F.3d 1233, 1238 (7th Cir. 1993). Second, evidence of other similar acts could be used to impeach the credibility of the Area 2 police officers who will testify at the hearing.

To say, as the State does, there is a qualitative distinction between shocking one suspect's genitals with a cattle prod and beating another with a flashlight, or inserting a shotgun in a suspect's mouth as opposed to a handgun, is to trivialize established principles for decent law enforcement. Under that view, accepted standards descend to banality. Minor differences in technique do not alter the nature of the torturer's work.

We believe the record in this case brings Cannon's renewed motion to suppress within the *Enis* and *Holland* exceptions to the collateral estoppel bar.

· Reports prepared by the Office of Professional Standards of the Chicago Police Department, surveying the alleged systematic abuse of suspects at Area 2 headquarters, were not available to Cannon's lawyer in 1984. See *People v. Bates*, 267 Ill. App. 3d 503, 505-06, 642 N.E.2d 774 (1994).

Nothing in the record demonstrates that Cannon's lawyer knew or should have known of the claims of brutality made by other suspects questioned at Area 2. In addition, newly discovered or not,

the evidence of 28 other Area 2 arrestees, 16 of them questioned by some of the officers who questioned Cannon, amounts to "special circumstances" that justify a new hearing of the motion to suppress.

There is precedent for what we do. In *Bates*, the trial court, charged with considering whether a confession was tainted by police conduct, erred when it refused to consider the OPS reports on Area 2 abuse of suspects. The court held the reports "went to the issue of the purpose and flagrancy of police misconduct." *People v. Bates*, 267 Ill. App. 3d at 505.

In *People v. Banks*, 192 Ill. App. 3d 986, 549 N.E.2d 766 (1989), we held the trial court erred when it excluded evidence at trial that the arresting officers had brutalized another suspect 13 months before Banks was arrested. We said:

> "Thus, such evidence tends to show the conduct that these two police officers employ in interrogating suspects who are in custody, and such evidence is therefore probative as to the conduct they employed in the present case to obtain defendant's confession." *People v. Banks*, 192 Ill. App. 3d at 994.

We cannot avoid observing that the two officers referred to in the *Banks* case were two of the officers who arrested and questioned Darryl Cannon on November 2, 1983. Banks was arrested on October 28, 1983.

We recognize there are reported decisions that support a trial judge's refusal to consider a defendant's claim that other suspects were similarly mistreated by officers seeking confessions. In those cases, however, the defendant's allegations were general in nature, often remote in time. No other decision presents so compelling a record as we find in this case.

In *People v. Orange*, 168 Ill. 2d 138, 150, 659 N.E.2d 935 (1995), for example, the defendant's claim of systematic torture at Area 2 from 1982 to 1984 was rejected because he offered "generalized allegations of coercive activity in Area 2, without other evidence."

The testimony of three persons allegedly abused at Area 2 was offered at trial in *People v. Hobley*, 159 Ill. 2d 272, 637 N.E.2d 992 (1994). One of the three made no claim of physical abuse. Another claimed physical abuse that took place three years before Hobley's arrest. The third made claims that were not similar to those made by Hobley. The court, distinguishing, but not disapproving of *People v. Banks*, concluded the trial court's exclusion of the evidence was not an abuse of discretion.

In *People v. Murray*, 254 Ill. App. 3d 538, 553, 626 N.E.2d 1140 (1993), the defendant's allegations of abuse of other suspects were properly excluded because they were "general in nature."

Finally, in *People v. Maxwell*, 173 Ill. 2d 102, 670 N.E.2d 679 (1996), the defendant in a postconviction proceeding claimed his constitutional rights were violated at the pretrial motion stage because studies and reports establishing physical abuse and coercion of confessions at Area 2 were not available to him at the time. The court held the defendant failed to make a substantial showing his constitutional rights were violated.

In the case before us, our decision is grounded in basic evidence law: the trial judge should consider relevant evidence when deciding whether a confession was voluntarily made.

We understand, as the State has emphasized, that Cannon has not demonstrated he was injured while in police custody. That, of course, is a fact the trial court should consider at the new hearing. See *People v. Wilson*, 116 Ill. 2d 29, 506 N.E.2d 571 (1987). Likewise, the defendant's failure to immediately report the alleged beating, while not necessarily dispositive of his claim he was brutalized, should be considered by the trial judge. See *People v. Case*, 218 Ill. App. 3d 146, 156, 577 N.E.2d 1291 (1991).

While it will be the trial court's initial task to determine what evidence will be heard, we believe the question of whether the arresting officers possessed shotguns at the time Cannon claimed they did should be revisited. Since the first hearing in 1984, a Chicago police department equipment log has been made available to the defense. The log reflects the officers who arrested the defendant checked out three different shotguns on the day of the arrest. Each was approved by Sgt. Byrne, who supervised the arrest and interrogation of Darryl Cannon. Two of the shotguns were not returned until noon that day, five hours after Cannon was arrested. An evidentiary hearing should clarify the conflicting testimony about the shotgun Cannon claims was placed in his mouth.

At the new hearing the trial court will consider evidence relevant to the question of suppression, bearing in mind the conclusions we have reached in this opinion. We make no comment on the weight or impact of the evidence, nor do we suggest what the outcome of the hearing should be.

Because we have found another hearing on Cannon's motion to suppress his confession is required, we need not consider whether the participation of then-Judge Maloney is sufficient reason for a new hearing.

CONCLUSION

We remand this cause to the trial court for a new hearing on the defendant's motion to suppress his confession. To that end, we also

vacate the defendant's conviction and sentence. If, after a hearing, the trial court decides to suppress the defendant's confession, it should then proceed to trial. If the trial court denies the motion to suppress, it should reinstate the conviction and sentence. We then will proceed to consider the other issues raised by the defendant in this appeal.

Conviction and sentence vacated and remanded pursuant to directions of this court.

Vacated and remanded.

CERDA and BURKE, JJ., concur.