Docket No. 86880–Agenda 3–September 2000.

THE PEOPLE OF THE STATE OF ILLINOIS, Appellee, v. LEROY ORANGE, Appellant.

Opinion filed April 29, 2001.

JUSTICE THOMAS delivered the opinion of the court:

The defendant, Leroy Orange, appeals from an order of the circuit court of Cook County dismissing, without an evidentiary hearing, his second post-conviction petition. Because the defendant was sentenced to death for the underlying murder convictions, he appeals directly to this court. 134 Ill. 2d R. 651(a). We now affirm the judgment of the circuit court.

BACKGROUND

The defendant was convicted in 1985 of four counts each of murder and concealment of a homicidal death, and one count of aggravated arson, and subsequently was sentenced to death. On direct appeal, this court affirmed the defendant’s murder and concealment convictions and death sentence, but reversed his arson conviction. 
People v. Orange
, 121 Ill. 2d 364 (1988). The Supreme Court denied the defendant’s petition for writ of 
certiorari
. 
Orange v. Illinois
, 488 U.S. 900, 102 L. Ed. 2d 235, 109 S. Ct. 247 (1988). Thereafter, the defendant filed an amended post-conviction petition in the circuit court of Cook County, which the trial court summarily dismissed. On appeal from that dismissal, this court remanded the cause for an evidentiary hearing on the portion of the defendant’s petition that alleged that he was denied the effective assistance of counsel at his sentencing hearing. 
People v. Orange
, 168 Ill. 2d 138 (1995). On remand, the trial court found that the defendant’s trial counsel had been ineffective at sentencing and ordered a new sentencing hearing. While those proceedings were pending, the defendant filed a second petition for post-conviction relief, and then an amended second post-conviction petition, in the circuit court of Cook County. The amended second petition alleged that new evidence supported his previous assertions that his confession to the murders was the result of torture by a group of Chicago police officers at Area 2 police headquarters. The trial court dismissed this petition without an evidentiary hearing. The circuit court stayed the proceedings on the new sentencing hearing pending the defendant’s appeal of the dismissal of his petition.

This court has previously set forth a detailed recitation of the evidence presented at the defendant’s trial. 
Orange
, 121 Ill. 2d 364. Therefore, we will state here only those facts necessary to resolve the issues involved in this appeal. On January 12, 1984, around 6:30 a.m., the police responded to a report of a fire at an apartment building. Upon arriving, they discovered the dead bodies of four persons who had been repeatedly stabbed. One of the victims was a 10-year-old child. The defendant, an acquaintance of the victims, was arrested at his mother’s house later that day around 3 p.m. Prior to the defendant’s arrest, Mildred Orange, the defendant’s wife, told police that the defendant had not come home the night of the murders. She also told police that she had found some clothing in her kitchen that belonged to the defendant’s brother, Leonard Kidd. The clothing had not been there on the morning of January 12 when she went to work. Later that night when she went to the police station, she noticed that the defendant was not wearing the same clothes he had been wearing when he left the house the night before. While the officers were questioning the defendant at the police station, Kidd telephoned Mildred and asked her to call the police to find out the nature of the charges against the defendant. During the course of their conversation, Kidd referred to the defendant by his nickname “Pokey” and told her that he had something to tell her that could put he and Pokey away for the rest of their lives. Mildred met Kidd at a restaurant a short time later where he was then arrested by police. At the time of his arrest, Kidd was wearing a watch that belonged to one of the victims.

The defendant gave an oral statement and a signed confession to the police, admitting that he had stabbed the four victims and had attempted to burn the apartment. Kidd also provided a detailed statement to police that was generally consistent with the defendant’s confession. At trial, however, the defendant testified that he had not been involved in the crimes. He acknowledged that he was present at the apartment on the night in question, but he testified that he had left before the crimes were committed. The defendant further claimed that the police had coerced his confession by physically torturing him. Kidd also testified at the defendant’s trial but recanted his earlier statement to the police and took full responsibility for the crimes. Kidd denied that the defendant had taken any part in the crimes.

 With respect to his claim that he was tortured by police, the defendant testified that he was placed in an interrogation room and handcuffed behind his back. According to the defendant, “two guys” placed a plastic bag over his head and told him to tell them where the weapon was located. When he refused, they placed the bag over his head again and hit him in the stomach to keep him from holding his breath. Sometime later, a man that police said was from the State’s Attorney’s office came in to see the defendant. The defendant claimed that he told the man about the plastic bag and the beating. The defendant also claimed that he told him that police had stuck him with an electrical device on his arm and that this had made his fingers move. He also said that they had “stuck some grease in his behind and stuck him in the behind.” After the man the defendant thought was from the State’s Attorney’s office left, one of the officers approached him and placed his hands between the defendant’s legs and squeezed his testicles. The defendant finally gave his confession to police about 4 a.m., after being in custody for about 12 hours.

According to the defendant, he was taken to the county jail after he gave his statement. About two hours later, the defendant was examined by a paramedic. The defendant told the paramedic that he had been stuck in the behind with pins and that somebody had squeezed his testicles. Finally, the defendant testified that when he talked to Assistant State’s Attorney Dennis Dernbach at the time of his confession he did not mention the police torture because he was fearful of further torture.

On cross-examination, the defendant acknowledged that he had not been in custody on January 11, 1984, even though he signed a consent to be examined by Dr. Parikh on January 14, 1984, stating that he was abused by police on January 11 and 12, 1984. The defendant also acknowledged that there was nothing in the consent to indicate that he told the doctor about the electric shock or the plastic bag, although the defendant did tell the doctor that he had been stuck in the butt with needles three or four times and that his testicles had been squeezed once.

Dr. Shirish Parikh, a neurosurgeon, testified that he was employed by the Department of Corrections, Cermak Hospital, when he examined the defendant on January 14, 1984. According to Parikh, the defendant told him that the police had stuck needles three or four times into his back, and that they had kicked and squeezed his scrotum throughout the night. Dr. Parikh further testified that he found no evidence of physical abuse or mistreatment. Specifically, he found no indication of bruising, swelling, or tenderness on the defendant’s back, scrotum or anus. The only mark on the defendant’s body was a slight pimple on the buttocks.

The State introduced the testimony of the police officers who had taken part in the investigation of the offenses and the interrogation of the defendant. They denied that any mistreatment of the defendant had occurred. Two police officers testified that Jon Burge, a police lieutenant at Area 2, was not present during the defendant’s interrogation, while one other officer testified that he did not know whether or not Burge had been in the interrogation room with the defendant.

At the close of all the evidence, the jury found the defendant guilty on the charges of murder, concealment of a homicidal death and aggravated arson. The defendant chose to proceed with a sentencing hearing before the judge without a jury. The judge at sentencing determined that the defendant was eligible for the death penalty based on the statutory aggravating factors that the defendant was 18 years old or older at the time of the crimes, that he had been convicted of the murder of two or more individuals, and that one of the victims was under 12 years of age and was murdered in an exceptionally brutal and heinous manner. The judge found no mitigating factors to preclude a sentence of death and the defendant was sentenced to death.

On direct appeal, this court affirmed the defendant’s murder and concealment convictions and death sentence, but reversed his arson conviction. 
People v. Orange
, 121 Ill. 2d 364 (1988). Thereafter, the defendant filed an amended post-conviction petition in the circuit court of Cook County, which the trial court summarily dismissed. In this amended post-conviction petition, the defendant alleged, 
inter alia
, that his counsel had been ineffective in failing to investigate and discover other complaints of torture that would have corroborated his allegations regarding coercive activities at Area 2. The petition further alleged that the defendant was electrically shocked by police when they placed electrodes on his arms and buttocks and that they placed a plastic bag over his head. The petition did not identify any officers by name. In support of his claims, the defendant submitted various documents and affidavits describing a pattern and practice of police brutality at Area 2, including a report prepared by the City of Chicago’s office of police standards (OPS report). The OPS report was completed on September 28, 1990, following an internal investigation of police misconduct at Area 2. The OPS investigation began in 1989. The first section of the OPS report is known as the Goldston report. It documents the allegations of 50 different suspects concerning misconduct by Area 2 personnel from 1973 to 1986. The allegations included 27 incidents of beatings, 13 incidents where a plastic bag or typewriter cover was placed over a suspect’s head, 11 incidents where a firearm was used to threaten or strike a suspect, 9 incidents of electroshock, and 2 hanging incidents. The report concluded that Area 2 police engaged in systematic abuse of suspects during the 13-year period, which included planned torture. The report specifically listed the names of six officers, one of which was Jon Burge, that “repeatedly appeared as connected to alleged acts of abuse.” The defendant submitted the Goldston report in its entirety to the trial court in support of his first post-conviction petition on February 17, 1993, noting that it had been produced pursuant to a confidential order. After hearing arguments on the State’s motion to dismiss, the trial court dismissed the defendant’s petition without an evidentiary hearing.

On appeal from that dismissal, this court remanded the cause for an evidentiary hearing on the portion of the defendant’s petition that alleged that the defendant was denied the effective assistance of counsel at his sentencing hearing. 
People v. Orange
, 168 Ill. 2d 138 (1995). However, this court rejected the defendant’s ineffective-assistance claim related to counsel’s conduct at trial in not investigating other allegations of abuse at Area 2, noting that “the affidavits submitted by the defendant in support of his amended post-conviction petition are generalized and do not support the claims of torture or coercion made by him in this case.” The court then found that “generalized allegations of coercive activity in Area 2, without other evidence, would not establish that this defendant was coerced into confessing.” On remand, the trial court found that the defendant’s trial counsel had been ineffective at sentencing and ordered a new sentencing hearing. While the case was pending on remand, the defendant filed a second post-conviction petition and then an amended second post-conviction petition. This time the defendant alleged, among other things, that newly discovered evidence supported his claim that he was tortured at Area 2. In support of his amended second petition, the defendant again attached the Goldston report, along with various other documents. This time he stated in his petition that Burge was the main commander identified in the Goldston report and that the “defendant’s accusations of torture appear in the report.” The defendant claimed that the types of torture documented in the report, 
i.e.
, “baggings and shockings,” lend credibility to his own accusations. The defendant also attached to his petition the affidavit of pathologist Dr. Robert Kirschner, which stated, 
inter alia
, that he interviewed the defendant on August 10, 1998, and determined that the defendant’s description of the events surrounding his confession was consistent with someone who had been tortured. The trial court dismissed the successor petition without an evidentiary hearing, finding that it was an attempt to revisit an issue already decided by the supreme court on appeal from the first post-conviction petition and that, at any rate, the evidence presented by the defendant was not of such a conclusive character that it would change the result on retrial. The defendant’s appeal to this court followed. See 134 Ill. 2d R. 651(a).

ANALYSIS

The Post-Conviction Hearing Act (725 ILCS 5/122–1 
et seq. 
(West 1998)) provides a means by which a defendant may challenge his conviction for violations of federal or state constitutional rights. 
People v. Tenner
, 175 Ill. 2d 372, 377 (1997). An action seeking post-conviction relief is a collateral proceeding, not an appeal from the underlying judgment. 
People v. Evans
, 186 Ill. 2d 83, 89 (1999). To be entitled to post-conviction relief, a defendant must establish a substantial deprivation of federal or state constitutional rights in the proceedings that resulted in the conviction or sentence being challenged. 
People v. Morgan
, 187 Ill. 2d 500, 528 (1999). Because a proceeding brought under the Act is a collateral attack on a judgment of conviction, all issues actually decided on direct appeal are 
res judicata
, and all issues that could have been raised in the original proceeding but were not are waived. 
People v. Whitehead
, 169 Ill. 2d 355, 371 (1996). The doctrines of 
res judicata 
and waiver, however, will be relaxed when appropriate under principles of fundamental fairness. 
People v. Holman
, 191 Ill. 2d 204, 210 (2000).

An evidentiary hearing is warranted on a post-conviction petition only where the allegations of the petition, supported where appropriate by the trial record or accompanying affidavits, make a substantial showing that a defendant’s constitutional rights have been violated. 
Morgan
, 187 Ill. 2d at 528. In determining whether to grant an evidentiary hearing, all well-pleaded facts in the petition and in accompanying affidavits are taken as true. 
Morgan
, 187 Ill. 2d at 528. A trial court’s determination regarding the sufficiency of the allegations contained in a post-conviction petition is reviewed 
de novo. Morgan
, 187 Ill. 2d at 528.

I. Newly Discovered Evidence Claim

The defendant first argues that newly discovered evidence corroborates his claims that his confession was coerced and involuntary, making its introduction at trial a violation of his state and federal constitutional rights. In support of his claim, the defendant relies on the Goldston report, along with other documents, including (1) the appellate court’s decision in 
People v. Cannon
, 293 Ill. App. 3d 634 (1997); (2) the City of Chicago’s admission in 
Wilson v. City of Chicago
, 900 F. Supp. 1015 (N.D. Ill. 1995), that officers at Area 2, including Burge, had abused the plaintiff while in custody on murder charges; (3) the federal district court decision in 
United States ex rel. Maxwell v. Gilmore
, 37 F. Supp. 2d 1078 (N.D. Ill. 1999), ordering an evidentiary hearing to determine whether, in connection with allegations of police torture at Area 2, prosecutors had 
violated 
the rule requiring them to disclose favorable information to the accused; (4) additional OPS reports involving investigations of many of the cases noted in the Goldston report; and (5) the affidavits of various friends and relatives of the defendant.

In response, the State initially argues that the claim the defendant now raises is barred by principles of 
res judicata 
and waiver. We agree.

This is the defendant’s second post-conviction petition. The Post-Conviction Hearing Act contemplates the filing of only one post-conviction petition, although successive petitions may be allowed where the proceedings on the initial petition were deficient in some fundamental way. 
People v. Erickson
, 183 Ill. 2d 213, 222-23 (1998); 
Flores
, 153 Ill. 2d at 273-74. Section 122–3 of the Act provides that any claim of substantial denial of constitutional rights not raised in the original or an amended petition is waived. 725 ILCS 5/122–3 (West 1998). A ruling on an initial post-conviction petition has 
res judicata 
effect with respect to all claims that were raised or could have been raised on the initial petition. 
People v. Jones
, 191 Ill. 2d 354, 358 (2000). Consequently, a defendant faces a daunting procedural hurdle when bringing a successive post-conviction petition. 
Jones
, 191 Ill. 2d at 358. This court has previously referred to the cause and prejudice test as an aid in determining whether a successive post-conviction petition may proceed. 
People v. Holman
, 191 Ill. 2d 204, 210 (2000); 
People v. Franklin
, 167 Ill. 2d 1, 15 (1995). Under this test, the defendant must demonstrate “cause” for failing to raise the error in prior proceedings and actual “prejudice” resulting from the claimed error. 
Flores
, 153 Ill. 2d at 279. “Cause” has been defined as an objective factor that impeded defense counsel’s efforts to raise the claim in an earlier proceeding. 
Jones
, 191 Ill. 2d at 358. “Prejudice” has been defined as an error which so infected the entire trial that the defendant’s conviction violates due process. 
Jones
, 191 Ill. 2d at 358.

Here, we initially note that the defendant has failed to satisfy the “cause” prong of the test because he has failed to point to an objective factor that impeded his counsel’s efforts to raise the issue in an earlier proceeding. The defendant did submit the Goldston report in conjunction with his first post-conviction petition in 1993, along with hundreds of pages of other documents, to support his argument that his trial counsel was ineffective in failing to discover pattern and practice evidence of torture at Area 2 to corroborate the defendant’s own claims of coercion at Area 2. See 
Orange
, 168 Ill. 2d at 148. With respect to the affidavits and other material presented by the defendant, including the Goldston report, this court specifically concluded that they amounted to “generalized allegations” that did not support the defendant’s claim that he was coerced in this case. 
Orange
, 168 Ill. 2d at 150-51. Despite this court’s ruling on his first post-conviction petition, the defendant filed a second post-conviction petition in 1998, which once again alleged that pattern and practice evidence would corroborate his claim of mistreatment at Area 2. However, this is essentially the same claim that the defendant raised in his first post-conviction petition several years earlier. To the extent that it could now be classified as a different claim because it was previously raised in the context of ineffective assistance of trial counsel, we believe that the argument is one that could have been raised in the earlier proceeding and therefore is barred.

Additionally, we find that even if the defendant could establish cause for failing to raise his claim earlier, he cannot establish that he suffered any prejudice in connection with the claim because his alleged “newly discovered evidence” does not satisfy the standard for granting a new trial. For new evidence to warrant a new trial, the evidence (1) must be of such conclusive character that it will probably change the result on retrial; (2) must be material to the issue, not merely cumulative; and (3) must have been discovered since trial and be of such character that the defendant in the exercise of due diligence could not have discovered it earlier. 
People v. Molstad
, 101 Ill. 2d 128, 134 (1984).

Again, the Goldston report was first submitted by the defendant in 1993 in connection with his first post-conviction petition. Not only was the report discoverable prior to the first post-conviction proceeding, it was discovered and used to support the defendant’s first post-conviction petition. The defendant does not argue that the Goldston report itself is new evidence. Instead, the defendant relies upon his new allegation that Burge was involved in his torture, along with other documents such as recent court decisions and other OPS reports of investigations of torture.

With respect to the defendant’s allegation that Burge had been involved in eliciting his confession by coercion, we note that the defendant did not name Burge as one of his torturers in his first post-conviction petition filed in 1991, even though he claims that he learned of the identity of Burge when he was shown a group of pictures by an OPS investigator in 1990. Thus, the defendant cannot point to an objective factor that impeded his effort to raise this claim in his first post-conviction petition. Moreover, because Burge was employed by the Chicago police department for several years following the date of the defendant’s interrogation, the identity of Burge was something that the defendant could have discovered prior to trial through the exercise of due diligence.

Furthermore, the record of the trial proceedings involving the defendant’s confession contains over 600 pages. Yet, it does not contain any specific references or descriptions as to the identity of the defendant’s torturers. In fact, the various officers responsible for interrogating the defendant testified at trial and denied that any coercion took place. The defendant has not named any of these officers as participating in any acts of torture. Two of the officers testified that Burge was not present at the defendant’s interrogation and a third testified that he did not know if Burge was present. Given that the defendant’s allegedly new evidence does not tend to discredit or contradict the denial of coercion by any of the officers that have taken responsibility for the defendant’s interrogation, we are unable to say that the evidence is of such a conclusive character that it would probably change the result on retrial.

The rest of the material that the defendant relies on as being newly discovered evidence is also unavailing. First, the affidavits of the defendant’s friends and family contain matters that could have been discovered prior to the defendant’s trial through the exercise of due diligence and therefore do not warrant a new trial. Second, contrary to the defendant’s assertions, the holdings of various state and federal courts in recent years with respect to the activities at Area 2 do not in themselves constitute evidence that the defendant in this case was tortured.

In 
Cannon
, the appellate court, on direct appeal, remanded the cause for a new suppression hearing on the voluntariness of the defendant’s confession because the judge who had ruled on the motion to suppress was convicted of accepting bribes in murder cases and because the defendant had new evidence, in the form of OPS reports, that the same officers who had interrogated him had systematically tortured other suspects at area 2 near the time the defendant was questioned. 
Cannon
, 293 Ill. App. 3d at 637-40. However, 
Cannon 
specifically distinguished the instant defendant’s claim of systematic torture in 
Orange
, 168 Ill. 2d at 150, on the basis that he had presented only generalized allegations. 
Cannon
, 293 Ill. App. 3d at 641. Given that the same officers who interrogated the defendant in that case appeared in the OPS reports as committing acts of abuse and that the court specifically distinguished 
Orange
, we do not consider the appellate court’s decision in 
Cannon 
to be “new evidence” supporting the defendant’s claim.

In 
Wilson
, a federal civil rights case, the court noted that the City of Chicago had admitted that the Area 2 officers in that case had physically abused the plaintiff, Andrew Wilson. 
Wilson
, 900 F. Supp. at 1029. There, the jury had found that the City had a 
de facto 
policy of authorizing the police to physically abuse persons suspected of killing or injuring a police officer. 
Wilson
, 900 F. Supp. at 1019. Because the victims in the present case were not police officers, and the City’s admission in 
Wilson 
related only to the plaintiff in that case as opposed to any other suspects alleging abuse, any probative value to the present case that the City’s admission in 
Wilson 
might have is weakened to the point of irrelevancy. See 
People v. Patterson
, 192 Ill. 2d 93, 126 (2000).

The defendant’s reliance on 
Maxwell
, 37 F. Supp. 1078, is also unpersuasive. There, the court granted the defendant’s request for an evidentiary hearing into his claim that prosecutors violated the rule set forth in
 Brady v. Maryland
, 373 U.S. 83, 10 L. Ed. 2d 215, 83 S. Ct. 1194 (1963), by withholding exculpatory information about physical abuse of suspects at Area 2. 
Maxwell
, 37 F. Supp. at 1099. In observing that “it is now common knowledge” that a pattern and practice of physical abuse and torture of suspects occurred at Area 2 in the early to mid-1980s, the court specifically relied upon internal police accounts (the OPS reports) and Wilson’s civil rights case. 
Maxwell
, 37 F. Supp. at 1094. These were essentially the same materials that the defendant in the present case presented to support his first post-conviction petition. Thus, the court’s conclusion in 
Maxwell 
is at best merely cumulative evidence. We also note that unlike the present case, the officers who conducted the defendant’s interrogation in 
Maxwell 
were specifically named as perpetrators of abuse in the reports on the systematic abuse at Area 2. 
Maxwell
, 37 F. Supp. 2d at 1094; 
People v. Maxwell
, 173 Ill. 2d 102, 120 (1996). Additionally, the petitioner in 
Maxwell 
was not procedurally barred from raising his claim in federal court because, in contrast to the defendant in the present case, he raised it in his first post-conviction petition. See 
Maxwell
, 37 F. Supp. 2d at 1094.

The defendant has filed additional materials for the first time as part of his appendix to his appellant’s brief. These documents include OPS investigator Leutie Lawrence’s reports on his investigation of various allegations of misconduct at Area 2. However, the documents were not filed in the circuit court in support of his second post-conviction petition. Therefore, they are not part of the record on appeal and are not properly before this court. 
Kazubowski v. Kazubowski
, 45 Ill. 2d 405, 415 (1970). At any rate, we have examined the material and find it to be merely cumulative of the Goldston report. The Goldston report contains information on investigations into 50 cases of alleged police abuse at Area 2. The material now filed by the defendant discusses many of the same cases noted in the Goldston report and does not add anything new to the defendant’s case. Under the circumstances, we can only characterize it as cumulative of the material that was presented in the defendant’s first post-conviction proceeding.

The present case is distinguishable from two recent decisions of this court holding that the defendants in those cases were  entitled to evidentiary hearings based on allegations of newly discovered evidence of police abuse at Area 2. See 
People v. King
, 192 Ill. 2d 189 (2000); 
People v. Patterson
, 192 Ill. 2d 93 (2000).  Both 
King
 and 
Patterson
 involved newly discovered evidence presented in a 
first 
post-conviction petition and not raised in an earlier proceeding. Further, unlike the present case, the defendants in both of those cases identified or described the officers that had allegedly abused them at Area 2. In those cases, it was also undisputed that the officers involved in the interrogations were also named in the OPS reports as committing acts of physical abuse or failing to stop such abuse. 
King
, 192 Ill. 2d at 198; 
Patterson
, 192 Ill. 2d at 107-08, 145; 
People v. Patterson
, 154 Ill. 2d 414, 440-45 (1992). In contrast, the defendant in the present case did not describe the officers that allegedly had tortured him and did not identify any of the officers at his trial or in his first post-conviction petition. Further, the officers who testified at the present defendant’s trial that they were responsible for the defendant’s interrogation were not named in any of the internal police investigations as having abused suspects. In 
Patterson
, this court specifically distinguished the court’s decision on the instant defendant’s first post-conviction petition in 
Orange
 by noting that “this court rejected the other evidence because it consisted of only generalized allegations of coercive activity.” 
Patterson
, 192 Ill. 2d at 143, citing 
Orange
, 168 Ill. 2d at 150-51. Under the circumstances, we do not find 
Patterson 
and 
King
 to be determinative here.

Instead, we find that our recent decision in 
People v. Mahaffey
, 194 Ill. 2d 154 (2000), is more closely analogous to the present case than 
King
 and 
Patterson
. In 
Mahaffey
, we held that the newly discovered evidence presented by the defendant of police coercion at Area 2 was not of such a conclusive character that it would change the result on retrial in light of the evidence of the defendant’s guilt; therefore, the defendant suffered no prejudice as a result of the claimed error. 
Mahaffey
, 194 Ill. 2d at 179. Similarly, we conclude that the present defendant did not suffer any prejudice as a result of the claimed error. Because we find that the defendant failed to satisfy the cause and prejudice test for relaxing the procedural bar to his newly discovered evidence claim, we hold that the circuit court properly dismissed this claim of the defendant’s petition as barred by principles of 
res judicata
 and waiver.

II. 
Brady 
Claim

The defendant next argues that his constitutional right to due process of law was violated when the State failed to disclose all exculpatory evidence as required by 
Brady v. Maryland
, 373 U.S. 83, 10 L. Ed. 2d 215, 83 S. Ct. 1194 (1963). Specifically, the defendant maintains that evidence of a pattern and practice of abuse at Area 2 would have been material to a motion to suppress his confession and would have bolstered his claim of coercion at trial. He asserts that the State cannot claim that it lacked knowledge of the abuse because under 
Kyles v. Whitley
, 514 U.S. 419, 131 L. Ed. 2d 490, 115 S. Ct. 1555 (1995), knowledge by any agents of the State, such as police officers, is imputed to the State.

We find that the defendant’s 
Brady 
claim is also barred by principles of 
res judicata. 
Again, a ruling on an initial post-conviction petition has 
res judicata 
effect with respect to all claims that could have been raised in the initial petition. 
Patterson
, 192 Ill. 2d at 146 (claim not raised in an original or amended post-conviction petition is waived); 
Jones
, 191 Ill. 2d at 358 (
res judicata 
effect attaches to all claims that could have been raised in the first post-conviction petition proceeding but were not). In this case, the 
Brady 
claim is certainly one that could have been raised in the earlier proceeding but was not. The defendant had the Goldston report at the time of his first post-conviction petition and was obviously aware of the facts that would have supported a claim that the State should have disclosed evidence of a pattern and practice of abuse. Yet, the defendant failed to raise the claim, and it is now barred.

We further find that the defendant has failed to establish any prejudice in connection with the claimed error. The United States Supreme Court set forth the government’s affirmative duty to disclose evidence favorable to the defendant in 
Brady
, 373 U.S. 83, 10 L. Ed. 2d 215, 83 S. Ct. 1194. 
People v. Hobley
, 182 Ill. 2d 404, 432 (1998). There, the Court held that the prosecution must disclose evidence that is both favorable to the accused and “material either to guilt or to punishment.” 
Brady
, 373 U.S. at 87, 10 L. Ed. 2d at 218, 83 S. Ct. at 1197. Evidence is “material” if there is “a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different.” 
United States v. Bagley
, 473 U.S. 667, 682, 87 L. Ed. 2d 481, 494, 105 S. Ct. 3375, 3383 (1985).

In 
Mahaffey
, we considered a similar argument about the State’s duty to disclose pattern and practice evidence of coercive activities at Area 2.
 Mahaffey
, 194 Ill. 2d at 171-74. In finding that no 
Brady 
violation occurred in that case, the court noted that the documents relied upon by the defendant in support of his claim were not in existence at the time of his suppression hearing and the defendant made no showing that the information contained within the documents was available to the State at the time of the hearing. 
Mahaffey
, 194 Ill. 2d at 173. The court stated that “any apparent nexus between alleged incidents of abuse of other suspects by Area 2 officers and defendant’s claims did not arise until several years after defendant’s suppression motion, and it was only at that later time that investigations were initiated into interrogation practices at Area 2. Therefore, defendant cannot properly claim that the State violated the 
Brady 
rule by failing to disclose information that was unavailable ***.” 
Mahaffey
, 194 Ill. 2d at 174.

Here, the defendant relies on essentially the same documents as the defendant in 
Mahaffey 
to support his claim. Similarly, the present defendant has made no showing that the information contained within the Goldston report was available to the State at the time of the defendant’s trial in 1985. In fact, OPS investigations did not begin until 1989, culminating in the OPS report in 1990. We do not believe that, under the facts of the present case, the rule in 
Brady 
requires the prosecution to disclose information about misconduct in unrelated cases known only to individual police officers where the nexus between the other cases of alleged abuse and the defendant’s case was not known until years after the defendant’s trial. Under the circumstances, we find that the State did not violate the 
Brady 
rule as alleged by the defendant in his petition and, therefore, the defendant suffered no prejudice. Accordingly, the circuit court properly dismissed the claim.

III. Ineffective Assistance of Counsel Claim

The defendant next argues that his trial counsel was ineffective because he did not investigate the defendant’s claims of torture and did not file a motion to suppress the defendant’s confession.

The defendant raised, and this court rejected, precisely the same argument on appeal from the denial of his first post-conviction petition. See 
Orange
, 168 Ill. 2d at 147-54. Because the argument was raised and rejected in the prior appeal, it is 
res judicata. Jones
, 191 Ill. 2d at 358; 
People v. Maxwell
, 173 Ill. 2d 102, 123 (1996). Accordingly, we will not address it further.

IV. Actual Innocence Claim

Lastly, the defendant contends that he is entitled to an evidentiary hearing on his claim that he has newly discovered evidence that he is actually innocent of the crimes for which he was convicted.

Under the due process clause of the Illinois Constitution of 1970 (Ill. Const. 1970, art. I, §2), a defendant can raise in a post-conviction proceeding a “free-standing” claim of actual innocence based on newly discovered evidence. 
People v. Washington
, 171 Ill. 2d 475, 489 (1996). A free-standing claim of innocence means that the newly discovered evidence being relied upon “ ‘is not being used to supplement an assertion of a constitutional violation with respect to [the] trial.’ ” 
People v. Hobley
, 182 Ill. 2d 404, 443-44 (1998), quoting 
Washington
, 171 Ill. 2d at 479.

In 
Hobley
, the defendant raised a claim of actual innocence, relying upon newly discovered evidence showing that officers at Area 2 engaged in a pattern and practice of police torture. 
Hobley
, 182 Ill. 2d at 444. The court rejected the defendant’s claim, finding that the evidence was being used to supplement the defendant’s assertions that his confessions were coerced and involuntary and that the introduction of these confessions violated his constitutional rights. 
Hobley
, 182 Ill. 2d at 444. 
Hobley 
distinguished this court’s earlier decision in 
Washington 
by noting that the evidence in 
Washington 
was not being used to supplement an assertion of a constitutional violation at trial. 
Hobley
, 182 Ill. 2d at 444.

In 
Washington
, a witness was discovered years after the defendant’s conviction who claimed that two other men committed the murder for which the defendant was convicted and that she had not come forward sooner because she had been threatened and was afraid for her life. 
Washington
, 171 Ill. 2d at 477-78. In other words, the defendant’s new evidence consisted of proof that someone else had committed the murder for which he had been convicted. In that case, the court noted that the new evidence satisfied the standard for granting a new trial and granted relief. 
Washington
, 171 Ill. 2d at 489-90.

We find 
Hobley 
to be on point. Here, the defendant’s evidence fails to present a free-standing claim of actual innocence under 
Washington. 
Instead, it is being used to supplement his claim that his confession was coerced and involuntary. Accordingly, the defendant was not entitled to an evidentiary hearing on his claim of actual innocence.

CONCLUSION

For the foregoing reasons, we affirm the judgment of the circuit court of Cook County dismissing the defendant’s amended second post-conviction petition, and we remand the cause for the new sentencing hearing that was stayed by the circuit court pending the outcome of this appeal.

Affirmed and remanded.

CHIEF JUSTICE HARRISON, specially concurring:

I agree that we should affirm dismissal of Orange’s second post-conviction petition and remand the cause to the circuit court so that it can proceed with the new sentencing hearing.  I write separately because I would further hold that the State should not be permitted to seek the death penalty on remand. For the reasons set forth in my partial concurrence and partial dissent in
 People v. Bull
, 185 Ill. 2d 179 (1998), the Illinois death penalty law violates the eighth and fourteenth amendments to the United States Constitution (U.S. Const., amends. VIII, XIV) and article I, section 2, of the Illinois Constitution (Ill. Const. 1970, art. I, §2). It is therefore void and unenforceable, and Orange should be sentenced to a term of imprisonment (Ill. Rev. Stat. 1985, ch. 38, par. 9–1(j)). Because Orange was convicted of murdering more than one victim, the term of imprisonment must be natural life. Ill. Rev. Stat. 1985, ch. 38, par. 1005–8–1(a)(1)(c).