2024 IL App (2d) 230571-U
No. 2-23-0571
Order filed August 7, 2024

**NOTICE:** This order was filed under Supreme Court Rule 23(b) and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

IN THE

APPELLATE COURT OF ILLINOIS

SECOND DISTRICT

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) ) ) | Appeal from the Circuit Court of Kane County. |
| Plaintiff-Appellee, | ) ) | |
| v. | ) ) | No. 15-CF-1898 |
| CARL C. WALKER SR., | ) ) ) | Honorable David P. Kliment, |
| Defendant-Appellant. | ) | Judge, Presiding. |

PRESIDING JUSTICE McLAREN delivered the judgment of the court.
Justices Hutchinson and Jorgensen concurred in the judgment.

**ORDER**

¶ 1   *Held*:   Because we agree with appellate counsel that there is no arguable basis for appeal, we grant counsel's motion to withdraw and affirm the trial court.

¶ 2   Defendant, Carl C. Walker Sr., appeals from an order denying him leave to file a *pro se* successive petition under the Post-Conviction Hearing Act (Act) (725 ILCS 5/122-1 *et seq.* (West 2020)) for relief from his conviction of aggravated domestic battery (720 ILCS 5/12-3.3(a-5) (West 2014)). The Office of the State Appellate Defender (OSAD), appointed to represent him on appeal, has moved to withdraw. For the reasons below, we grant the motion and affirm the denial of leave to file the petition.

¶ 3                                    I. BACKGROUND

¶ 4     Defendant was indicted on four counts of domestic battery (*id.* § 12-3.2(a)(1), (a)(2)) (counts II, III, V, and VI) and two counts of aggravated domestic battery (*id.* § 12-3.3(a-5)) (counts I and IV).  Counts I through III stemmed from an incident on July 16, 2015.  Counts IV through VI stemmed from an incident on August 13, 2015.  The alleged victim was Snooky Lovellette.

¶ 5     Four days before defendant's December 12, 2016, bench trial, the State filed a motion under section 115-7.4 of the Code of Criminal Procedure of 1963 (725 ILCS 5/115-7.4 (West 2014)) to admit evidence of "[o]ther [a]cts of [d]omestic [v]iolence" that defendant committed against Lovellette on "July 16, 2016" (the State meant July 16, 2015, as was later apparent).  Specifically, the State alleged that defendant struck Lovellette and choked her with one hand.  The trial court heard the motion on the day of the trial.  The prosecutor said she wished to dismiss counts I through III, concerning the July 16, 2015, incident, and instead to admit evidence of that incident as propensity evidence as to the remaining charges.  Specifically, the State would present evidence that, on July 16, 2015, defendant "backhanded" Lovellette in the face and grabbed her by the neck.  Defense counsel acknowledged that the defense knew about this incident, "as it pertained to the charges in the indictment itself."  Counsel argued, however, that while the defense was prepared for a trial based on the criminal charges arising from the July 16, 2015, incident, the defense would be prejudiced by propensity evidence of that incident in a trial of the charges arising from the August 13, 2015, incident.  The court granted the State's motion to admit the evidence.  Defense counsel then requested a continuance.  The court denied the request.  The State dismissed counts I through III.

¶ 6     At trial, Lovellette testified that she was dating defendant and that they had a son.  On July 16, 2015, while in the front passenger seat of a vehicle driven by defendant, Lovellette began

singing in her native language of Tagalog. Defendant hit Lovellette's face with the back of his hand. According to Lovellette, defendant claimed that he hit her because she was "singing something that's bad for him." Later during the drive, defendant grabbed her neck with one hand and said, " 'If you want to call the police, I will kill you.' "

¶ 7    On August 13, 2015, at 9:30 p.m., defendant, Lovellette, and their son were at Lovellette's apartment in Aurora. Defendant became angry with Lovellette for interfering with his effort to discipline their son for disobedience. Defendant grabbed Lovellette's neck with one hand and squeezed. Lovellette testified that she was unable to breathe. Defendant let go after 10 to 15 seconds. The next day, Lovellette visited a friend who called the police. A police officer who spoke with Lovellette later that day testified that he observed bruises and red marks on Lovellette's neck and chest.

¶ 8    Defendant testified that he recalled staying at Lovellette's apartment one night in August 2015. He also recalled fighting with Lovellette about a disciplinary matter involving their son. Defendant denied choking or hitting Lovellette that night.

¶ 9    The jury found defendant guilty of two counts of domestic battery (counts V and VI) and one count of aggravated domestic battery (count IV). After merging counts V and VI into count IV, the trial court sentenced defendant to a 16-year prison term. Defendant appealed, arguing that the trial court erred in refusing to grant him a continuance after allowing the State, on the day of trial, to dismiss the charges stemming from the June 16, 2015, incident but to use evidence of that incident to show defendant's propensity to commit the offenses that allegedly occurred on August 15, 2015. *People v. Walker*, 2019 IL App (2d) 170262-U, ¶ 2. A divided panel of this court rejected the argument and affirmed defendant's conviction. *Id.* ¶ 16.

¶ 10    In January 2020, defendant filed a petition under section 2-1401 of the Code of Civil Procedure (735 ILCS 5/2-1401 (West 2018)) for relief from the judgment of conviction. Defendant claimed that the trial court erred by (1) permitting the jury to consider propensity evidence and (2) proceeding to trial before defense counsel was adequately prepared. While that petition was pending, defendant filed a second section 2-1401 petition, in which he claimed that the trial court erred in imposing an " 'enhanced/extended sentence.' " The trial court denied the second petition and later dismissed the first petition. Defendant appealed separately from the dispositions of the petitions, and the trial court appointed OSAD to represent defendant in each appeal. Appellate counsel representing defendant in his appeal from the denial of the second petition moved to withdraw. We granted the motion and affirmed the denial of the second section 2-1401 petition. *People v. Walker*, No. 2-20-0551, ¶ 15 (2021) (unpublished summary order under Illinois Supreme Court Rule 23(c)). We affirmed the dismissal of the first section 2-1401 petition. *People v. Walker*, No. 2-21-0449, ¶ 9 (2023) (unpublished summary order under Illinois Supreme Court Rule 23(c)).

¶ 11    On May 13, 2021, defendant filed a petition for relief under the Act. He claimed that the State engaged in a "selective and malicious prosecution *** to gain a conviction which, in turn, prevented him from defending against differing theories of prosecution." He also claimed that he received ineffective assistance from trial and appellate counsel due to their failure to "present[ ] a *de facto* reason to establish prejudice concerning the State's selective and differing theories of prosecution." The trial court summarily dismissed the petition. See 725 ILCS 5/122-2.1(a)(2) (West 2018). Defendant appealed, and the trial court appointed OSAD to represent him. Appellate counsel moved to withdraw. We granted the motion and affirmed the summary dismissal of the

petition. *People v. Walker*, No. 2-21-0712, ¶ 16 (2022) (unpublished summary order under Illinois Supreme Court Rule 23(c)).

¶ 12   On May 20, 2022, defendant submitted the successive postconviction petition at issue in this appeal. Defendant claimed first that he received the ineffective assistance of trial counsel. He asserted that trial counsel "ignored obvious leads when exculpatory evidence was not present." He also claimed counsel "conducted no investigation into the lack of medical evidence (teeth marks bruises, etc.)." He further asserted that Lovellette admitted fabricating the charges but did not specify when. Defendant attached several exhibits to the petition, including a photograph of him, Lovellette, and their son at the Shedd Aquarium. According to defendant, the photograph was taken on September 7, 2015, and depicted "a loving family." Defendant claimed that he presented the photo to trial counsel, who then refused to offer it into evidence. Defendant also attached (1) photographs of Lovellette, her son, and defendant during a 2019 visit with defendant at the Dixon Correctional Center and (2) a Department of Corrections visitors log indicating that Lovellette visited defendant 30 times as of October 8, 2020. Lovellette and defendant are embracing in some of the photographs. Defendant suggested that the photographs were inconsistent with Lovellette's accounts of his violent behavior.

¶ 13   Second, defendant claimed that his counsel on direct appeal was ineffective for "fail[ing] to raise trial counsel's ineffectiveness, *** where the claim could have been resolved on the record." Third, defendant asserted that the trial court erroneously refused to grant defense counsel a continuance "to acquire exculpatory evidence."

¶ 14   The trial court denied defendant leave to file the successive petition, and this appeal followed. The court appointed OSAD to represent defendant in this appeal.

¶ 15                                          II. ANALYSIS

¶ 16    Appellate counsel moves to withdraw pursuant to *Pennsylvania v. Finley*, 481 U.S. 551 (1987), and *People v. Lee*, 251 Ill. App. 3d 63 (1993).  In her motion, counsel states that she read the record and found no issue of arguable merit.  Counsel further states that she advised defendant of her opinion.  Counsel supports her motion with a memorandum of law providing a statement of facts, a list of potential issues, and arguments about why those issues lack arguable merit.  We advised defendant that he had 30 days to respond to the motion.  Defendant did not respond.

¶ 17    Counsel advises us that she considered arguing that the trial court erred in denying defendant leave to file his successive petition but found no potentially meritorious basis for such an argument.  We agree.

¶ 18    The Act provides a mechanism for criminal defendants to obtain relief from convictions based on substantial denials of their constitutional rights.  725 ILCS 5/122-1(a)(1) (West 2020).  "A postconviction proceeding is a collateral attack on a final judgment, and constitutional issues that were raised and decided on direct appeal are barred from postconviction consideration by the doctrine of *res judicata*, while issues that could have been raised, but were not, are forfeited." *People v. Wilson*, 2023 IL 127666, ¶ 22.  Moreover, "[t]he Act contemplates the filing of only a single petition" (*People v. Jackson*, 2021 IL 124818, ¶ 27), and leave of court is required for filing a successive petition (725 ILCS 5/122-1(f) (West 2020)).  "A ruling on an initial post-conviction petition has *res judicata* effect with respect to all claims that were raised or could have been raised on the initial petition." *People v. Orange*, 195 Ill. 2d 437, 449 (2001).

    "However, there are two exceptions where fundamental fairness requires that the bar against successive petitions be lifted.  [Citation.]  The first is the 'cause and prejudice' exception, which has been codified in the Act (725 ILCS 5/122-1(f) (West 20[20])).  [Citation.]  Under this exception, a petitioner must demonstrate both 'cause' for the failure

to raise a claim in the initial petition and 'prejudice' resulting from that failure. [Citation.] The second exception is the ' "fundamental miscarriage of justice" ' exception, which requires a petitioner to make a persuasive showing of actual innocence [citation] and does not require a showing of cause and prejudice [citation]." *Wilson*, 2023 IL 127666, ¶ 23.

Section 122-1(f) of the Act (725 ILCS 5/122-1(f) (West 2020)) sets forth the cause and prejudice exception to the bar against successive petitions:

"Only one petition may be filed by a petitioner under this Article without leave of the court. Leave of court may be granted only if a petitioner demonstrates cause for his or her failure to bring the claim in his or her initial post-conviction proceedings and prejudice results from that failure. For purposes of this subsection (f): (1) a prisoner shows cause by identifying an objective factor that impeded his or her ability to raise a specific claim during his or her initial post-conviction proceedings; and (2) a prisoner shows prejudice by demonstrating that the claim not raised during his or her initial post-conviction proceedings so infected the trial that the resulting conviction or sentence violated due process."

Defendant has the burden of making a *prima facie* showing of cause and prejudice, or actual innocence, to justify filing a successive petition. See *People v. Bailey*, 2017 IL 121450, ¶¶ 48-49. We agree with counsel that there is no arguable basis for applying either the cause and prejudice or actual innocence exceptions.

¶ 19    We begin with the cause and prejudice exception. We first consider defendant's claim that the trial court erred by denying his request for a continuance "to acquire exculpatory evidence." "[T]he Post–Conviction Hearing Act is not an alternative means for reviewing *non*constitutional issues." (Emphasis added.) *People v. Wilk*, 124 Ill. 2d 93, 107 (1988). Leaving aside whether the claim of an erroneously denied continuance is even of a constitutional dimension, it is clearly

barred by *res judicata*, as it was raised and decided in defendant's direct appeal and omitted from defendant's initial petition. Defendant also claims that a continuance was necessary to obtain "exculpatory evidence," but he does not describe that evidence. His assertion is ultimately a reiteration of his direct appeal claim: that he was prejudiced when the State decided to dismiss counts I through III and offer the evidence relating to those counts as propensity evidence. *Res judicata* squarely applies. We recognize that *res judicata* may be relaxed where the defendant meets the cause and prejudice test—by, for instance, relying on a newly recognized right. *People v. Clark*, 2023 IL 127273, ¶¶ 45, 66. However, we find nothing in defendant's successive petition to suggest any basis for relaxing *res judicata* as to this claim of an erroneously denied continuance.

¶ 20    Nor did defendant arguably demonstrate cause as to his claim of ineffective assistance of trial counsel. Defendant claims that trial counsel failed to pursue "obvious leads," but defendant fails to describe these in any detail. Leaving aside the generality of the claim, defendant offers no explanation why the claim could not have been raised in his initial postconviction petition. See *Bailey*, 2017 IL 121450, ¶¶ 48-49 (it is the defendant's burden to make a *prima facie* showing of cause and prejudice). Defendant also points to trial counsel's failure to offer into evidence the 2015 photograph of defendant, Lovellette, and their son. However, because defendant asserts that he presented the photograph to trial counsel, he presumably could have raised this claim, too, in his initial petition. Finally, defendant claims that trial counsel failed to investigate the lack of medical evidence. He again fails to explain why he could not have brought this claim earlier. Accordingly, defendant has not shown cause concerning his claim of trial counsel's ineffectiveness.

¶ 21    Similarly, defendant has not established cause for failing to raise, in his initial petition, his claim that counsel on direct appeal was ineffective for neglecting to argue that trial counsel was

ineffective in the foregoing respects. Notably, defendant acknowledges that at least some of the arguments he claims appellate counsel should have made were based on matters of record. If that is so, there is no apparent reason why defendant could not have alleged in his initial petition that appellate counsel should have made those arguments. In any event, because we have independently determined that defendant's initial petition could have raised trial counsel's ineffectiveness, we necessarily also conclude that defendant's initial petition could have raised the purely derivative claim of appellate counsel's ineffectiveness.

¶ 22    Finally, we agree with counsel that there is no potentially meritorious basis for arguing that the successive petition stated a cognizable actual innocence claim.

¶ 23    Leave of court to pursue an actual innocence claim in a successive postconviction petition should be granted "where the petitioner's *supporting documentation* raises the probability that it is more likely than not that no reasonable juror would have convicted the petitioner in light of the new evidence." (Emphasis added.) *People v. Griffin*, 2024 IL 128587, ¶ 45. The new evidence of innocence must be "of such conclusive character that it would probably result in acquittal." *Id.* In his successive petition, defendant alleged that Lovellette admitted fabricating the allegations against him. However, he provided no *documentation* of this alleged admission. As noted above, defendant did provide documentation (photographs and visitor logs) to establish that he and Lovellette maintained a cordial relationship after the alleged offense. Although this evidence might have some bearing on defendant's guilt or innocence, it is by no means of such a conclusive character that it probably would have resulted in acquittal. Accordingly, defendant was not entitled to bring this claim of actual innocence in his successive petition.

¶ 24    After examining the record, the motion to withdraw, and the memorandum of law, we agree with counsel that this appeal presents no issue of arguable merit. Thus, we grant the motion to withdraw, and we affirm the judgment of the circuit court of Kane County.

¶ 25                              III. CONCLUSION

¶ 26    For the reasons stated, we affirm the judgment of the circuit court of Kane County.

¶ 27    Affirmed.