# Illinois Official Reports

## Appellate Court

---

### *People v. Weathers*, 2015 IL App (1st) 133264

---

| | |
|---|---|
| Appellate Court Caption | THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. JEROME WEATHERS, Defendant-Appellant. |
| District & No. | First District, Fourth Division<br>Docket No. 1-13-3264 |
| Filed | November 25, 2015 |
| Decision Under Review | Appeal from the Circuit Court of Cook County, No. 02-CR-3010; the Hon. Kenneth J. Wadas, Judge, presiding. |
| Judgment | Reversed and remanded. |
| Counsel on Appeal | Michael J. Pelletier, Alan D. Goldberg, Patricia Mysza, and Lauren A. Bauser, all of State Appellate Defender's Office, of Chicago, for appellant.<br><br>Anita M. Alvarez, State's Attorney, of Chicago (Alan J. Spellberg, Miles J. Keleher, and Douglas P. Harvath, Assistant State's Attorneys, of counsel), for the People. |
| Panel | PRESIDING JUSTICE McBRIDE delivered the judgment of the court, with opinion.<br>Justices Howse and Ellis concurred in the judgment and opinion. |

**OPINION**

¶ 1    Defendant Jerome Weathers appeals the trial court's denial of his motion for leave to file a successive postconviction petition, arguing that he has satisfied the cause and prejudice test because he has asserted a violation of due process rights by the State's use of a physically coerced confession. Defendant contends that he provided newly discovered evidence by attaching portions of the 2012 Illinois Torture Inquiry and Relief Commission (TIRC) report related to the detectives who interrogated him, and this report was not available at the time of his initial postconviction petition.

¶ 2    Following a bench trial, defendant was found guilty of first degree murder in the January 2002 shooting death of Cornelius Buchanan and was subsequently sentenced to a term of 75 years in prison. Defendant was indicted with codefendants Byron Nelson, Corey Hodges, Lawrence Bradley, and Iran Thomas. None of the codefendants are involved in this appeal.

¶ 3    In January 2005, defendant, represented by the public defender's office, filed a motion to quash arrest and suppress evidence as well as a motion to suppress statements. The motion to suppress statements alleged that (1) defendant did not receive *Miranda* warnings (*Miranda v. Arizona*, 384 U.S. 436 (1966)) prior to his interrogation by the police detectives, and (2) his confession was the result of physical coercion by the detectives. Specifically, defendant asserted that one detective, possibly Detective O'Brien, "jabbed at him with an object believed to be a flashlight." At the police station, defendant's clothes were removed and he was given a gown to wear. Defendant was then left in a very cold room without warm clothing, and he was not given food. The next day, defendant was interrogated by two detectives, and Detective O'Brien "shoved, grabbed and otherwise made violent contact with the defendant during this interrogation." In June 2005, private counsel filed an appearance on defendant's behalf. Private counsel litigated the motion to quash arrest, which the trial court denied, but withdrew the motion to suppress prior to hearing. The motion to suppress was never litigated.

¶ 4    The following evidence was admitted at defendant's bench trial.

¶ 5    Officer Aaron Cunningham testified that he and his partner Officer Eric Majcen of the Chicago police department were on duty beginning at 3 p.m. on January 7, 2002. Officer Majcen was driving while Officer Cunningham was in the passenger seat. They were in uniform. Shortly before 7 p.m., the officers were patrolling the neighborhood of 50th Place and Peoria Street because of an ongoing gang conflict between the Black P Stones and the Gangster Disciples. They were driving northbound on Peoria Street at 50th Place when they saw "a group of black males" running from the alley at 50th Place across the street in front of the officers' marked squad car. The men continued to run into the alley on the other side of Peoria Street.

¶ 6    Officer Cunningham testified that he was able to see their faces as they ran past. The officers then activated emergency equipment and began pursuit of the men into the alley, located near 842 West 50th Place. The men continued to run through the alley until they reached a fence and began to climb it. Officer Cunningham got out of the car and was able to apprehend one of the men, identified as defendant. As defendant was climbing the fence, his pants were torn, and a handgun fell out of his pocket. Officer Cunningham took defendant into custody and recovered the firearm, identified as an Ithaca .45-semiautomatic handgun. Officer Majcen drove down the alley to cut the men off at the street.

¶ 7    A short time later, the officers received a flash message about a shooting at 5022 South Carpenter Street. Officers Cunningham and Majcen then returned to the area around the fence in the alley to search for other weapons. One handgun was found on the garage roof adjacent to the yard with the fence and two additional firearms were found in the yard. A few days later, Officer Cunningham helped locate a fifth handgun in the yard adjacent to where defendant was apprehended.

¶ 8    Forensic evidence was admitted that defendant had gunshot residue on his hands at the time of his arrest, and that five bullets had been fired from his handgun. Buchanan sustained six gunshot wounds. One bullet recovered from Buchanan's body was identified as fired from defendant's handgun. Police investigators collected 25 fired cartridge casings from the scene.

¶ 9    Defendant's videotaped statement was played for the jury. In the statement, defendant said that he was a former member of the Gangster Disciples and his codefendants were current members of the Gangster Disciples. In January 2002, there was a gang war over turf between the Gangster Disciples and the Black P Stones. On January 7, one of the codefendants told defendant and the others that a rival Black P Stones member had followed him in a blue Chevy and flashed anti-Gangster Disciples gang signs at him. The codefendants discussed going to Black P Stones neighborhood to look for someone to shoot. All of the codefendants were armed with a handgun.

¶ 10    The men went to a vacant lot near 50th Place and Carpenter Street. While they were there, a blue Chevrolet pulled up across the street from the vacant lot with one man in the car. The men walked up to the car and began shooting. Defendant stated that he fired his gun five times at the front of the car. After the shooting, the men ran across Peoria Street, back down the alley. As they were running, they saw a police car following them. He tried to climb over a fence, but his pants and shirt ripped as he climbed, and a handgun fell from out of his pocket. Defendant fell and then got up to continue running, but was caught by the police officer.

¶ 11    The defense rested without presenting evidence. The trial court found defendant guilty of first degree murder and that defendant personally discharged a handgun during the commission of the offense. The trial court subsequently sentenced defendant to a term of 75 years.

¶ 12    On direct appeal, defendant argued that the trial court erred in basing its sentencing decision on its personal feelings about gang violence and factors inherent in the offense and in failing to consider mitigating evidence. After careful review of the record, the briefs of the parties, and relevant case law, we affirmed defendant's conviction and sentence. *People v. Weathers*, No. 1-06-1768 (Oct. 24, 2008) (unpublished order under Supreme Court Rule 23).

¶ 13    In October 2009, defendant filed his initial *pro se* postconviction petition, alleging that his trial counsel was ineffective for withdrawing his motion to suppress statements because his videotaped statement was obtained without defendant having received *Miranda* warnings. The trial court summarily dismissed the petition as frivolous and patently without merit. The dismissal was affirmed on appeal. *People v. Weathers*, 2011 IL App (1st) 100389-U.

¶ 14    On May 14, 2014, defendant filed a motion for leave to file a successive postconviction petition with the criminal division of the circuit court. In his motion, defendant asserted that newly discovered evidence supported his claim of ineffective assistance because this evidence showed that detectives James O'Brien and John Halloran were "involved in a

pattern of abuse allegation of coercion tactics [*sic*] in multiple other cases." Defendant stated that he attached to his petition copies of TIRC database for abuse allegations against each of these detectives for support. Defendant also attached the transcripts from an unrelated hearing in which Detective O'Brien asserted fifth amendment protection in response to all questions other than his name and employment. Defendant argued that his trial counsel was ineffective for withdrawing his motion to suppress evidence, that his new evidence supported his contention that his confession was coerced, and that he was deprived of due process. The trial court denied defendant's motion for leave to file a successive postconviction petition, finding that defendant failed to satisfy the cause and prejudice test. The court held that defendant's argument that his trial counsel was ineffective had previously been raised in his initial postconviction petition was barred by *res judicata*.

¶ 15     This appeal followed.

¶ 16     The Illinois Post-Conviction Hearing Act (Post-Conviction Act) (725 ILCS 5/122-1 to 122-8 (West 2012)) provides a tool by which those under criminal sentence in this state can assert that their convictions were the result of a substantial denial of their rights under the United States Constitution or the Illinois Constitution or both. 725 ILCS 5/122-1(a) (West 2012); *People v. Coleman*, 183 Ill. 2d 366, 378-79 (1998). Postconviction relief is limited to constitutional deprivations that occurred at the original trial. *Id.* at 380. "A proceeding brought under the [Post-Conviction Act] is not an appeal of a defendant's underlying judgment. Rather, it is a collateral attack on the judgment." *People v. Evans*, 186 Ill. 2d 83, 89 (1999).

¶ 17     However, the Post-Conviction Act only contemplates the filing of one postconviction petition with limited exceptions. 725 ILCS 5/122-1(f) (West 2012); see also *People v. Pitsonbarger*, 205 Ill. 2d 444, 456 (2002). Under section 122-1(f), a defendant must satisfy the cause and prejudice test in order to be granted leave to file a successive postconviction petition. 725 ILCS 5/122-1(f) (West 2012).

>     "For purposes of this subsection (f): (1) a prisoner shows cause by identifying an objective factor that impeded his or her ability to raise a specific claim during his or her initial post-conviction proceedings; and (2) a prisoner shows prejudice by demonstrating that the claim not raised during his or her initial post-conviction proceedings so infected the trial that the resulting conviction or sentence violated due process." *Id.*

¶ 18     Both elements of the cause and prejudice test must be satisfied to prevail. *Pitsonbarger*, 205 Ill. 2d at 464. "In the context of a successive post-conviction petition, however, the procedural bar of waiver is not merely a principle of judicial administration; it is an express requirement of the statute." *Id.* at 458 (citing 725 ILCS 5/122-3 (West 1996)). We review the dismissal of a postconviction petition without an evidentiary hearing *de novo*. *Id.* at 456.

¶ 19     "Where, as here, the death penalty is not involved and the defendant makes no claim of actual innocence, Illinois law prohibits the defendant from raising an issue in a successive postconviction petition unless the defendant can establish a legally cognizable cause for his or her failure to raise that issue in an earlier proceeding and actual prejudice would result if defendant were denied consideration of the claimed error." *People v. Brown*, 225 Ill. 2d 188, 206 (2007) (citing *Pitsonbarger*, 205 Ill. 2d at 459-60).

¶ 20     The State argues on appeal that this court lacks jurisdiction to consider defendant's claim because in his *pro se* successive postconviction petition, defendant framed the issue as

ineffective assistance of trial counsel, rather than a due process violation. Although the State set forth the argument as a jurisdictional question, the State's argument fails to cite any case holding that this court lacks jurisdiction to consider the appeal. Rather, the crux of the State's argument is that defendant has forfeited the consideration of his claim by rephrasing the issue as due process on appeal. Therefore, we will only consider whether defendant's claim has been forfeited.

¶ 21    While defendant's petition is framed as an ineffective assistance claim, he consistently contends that newly discovered evidence supported his claim that detectives O'Brien and Halloran were "involved in a pattern of abuse allegation[s] of coercion tactics in multiple other cases." Defendant stated that he was "only able to secure this new evidence after he filed his first post-conviction petition and completed a full round of appeal on that petition." Defendant argued that "due process of law requires that a coerced confession be excluded from consideration by the jury."

¶ 22    " '[T]he question raised in an appeal from an order dismissing a post-conviction petition is whether the allegations in the petition, liberally construed and taken as true, are sufficient to invoke relief under the Act.' " (Emphasis omitted.) *People v. Jones*, 211 Ill. 2d 140, 148 (2004) (quoting *People v. Coleman*, 183 Ill. 2d 366, 388 (1998)). The State asks this court to narrowly construe the allegations in defendant's petition to conclude that he has raised a new issue for the first time on appeal. This is not the case. Defendant's *pro se* petition clearly alleged that his confession was physically coerced by detectives O'Brien and Halloran and that newly discovered evidence corroborated his claims. He attached the TIRC report and Detective O'Brien's testimony in another case as support. His petition, while inartful, did allege a due process violation in the use of his allegedly coerced confession. A liberal construction of defendant's *pro se* successive postconviction petition shows that defendant's claims on appeal are substantively the same as he raised in the petition. Accordingly, we find that defendant has not forfeited this claim on appeal and will consider the merits of his claim.

¶ 23    On appeal, defendant relies on the Illinois Supreme Court's decision in *People v. Wrice*, 2012 IL 111860, to support his contention that he has satisfied the cause and prejudice test and, thus, his motion for leave to file a successive postconviction petition should have been granted. Specifically, defendant contends that he has satisfied the cause requirement because the TIRC findings were not available until 2012, after the dismissal of his initial postconviction was affirmed on appeal. Defendant states that he first learned of the TIRC findings from another inmate in the Illinois Department of Corrections, and the findings outlined a pattern of misconduct by detectives Halloran and O'Brien, who interrogated defendant. Defendant attached a copy of TIRC database of abuse allegations from both detectives to his petition as well as testimony from a hearing in an unrelated defendant's case in which Detective O'Brien took fifth amendment protection to all questions asked other than his name and employment. Defendant also asserts that the holding in *Wrice* is applicable to his case to satisfy the prejudice requirement.

¶ 24    In *Wrice*, the defendant sought to file a second successive postconviction petition challenging his 1983 convictions for rape and deviate sexual assault, asserting that newly discovered evidence supported his previous claim that his confession was the result of police brutality and torture. *Id.* ¶ 1. Prior to trial, the defendant filed a motion to suppress statements he made to police arguing that he had been tortured at Area 2, which was denied. *Id.* ¶¶ 5, 12. The defendant was thereafter convicted of multiple crimes, which were affirmed on direct

appeal. *Id.* ¶¶ 37-38. The defendant filed his initial *pro se* postconviction petition in 1991 alleging abuse, but his petition was denied. *Id.* ¶ 39. In 2000, the defendant sought leave to file a successive postconviction petition, again alleging abuse. *Id.* ¶ 40. That petition was denied and the denial affirmed on appeal. *Id.*

¶ 25    In October 2007, the defendant filed a petition for leave to file a successive petition for postconviction relief, alleging that newly discovered evidence substantiated his prior claim that he was severely beaten and forced to confess to a crime he did not commit. *Id.* ¶ 41. In support, the defendant relied on the report of the Special State's Attorney released in 2006 (2006 Report), and documenting systematic torture at Area 2. *Id.* The trial court denied the defendant leave to file his petition. The appellate court reversed and remanded for a third stage evidentiary hearing, finding that the defendant satisfied the cause and prejudice test. *Id.* ¶ 43. The reviewing court concluded that the cause requirement had been satisfied because the defendant could not have argued that the 2006 Report corroborated his allegations of abuse in his prior petitions, and that the prejudice requirement was satisfied because " ' "[t]he use of a defendant's coerced confession as substantive evidence of his guilt is *never* harmless error." (Emphasis added.) *People v. Wilson*, 116 Ill. 2d 29, 41 (1987).' " *Id.* (quoting *People v. Wrice*, 406 Ill. App. 3d 43, 53 (2010)).

¶ 26    On appeal to the supreme court, the State conceded that the defendant had satisfied the cause prong of the cause and prejudice test, and only challenged the appellate court's conclusion that the defendant satisfied the prejudice requirement, arguing that pursuant to *Arizona v. Fulminante*, 499 U.S. 279 (1991), the admission of a coerced confession was subject to harmless-error review, and that the admission of the defendant's allegedly coerced confession was harmless beyond a reasonable doubt. *Wrice*, 2012 IL 111860, ¶ 49.

¶ 27    Following a lengthy analysis of *Fulminante* and whether the harmless analysis was applicable to coerced confessions, the supreme court concluded:

> "In light of *Fulminante*, the rule set forth in *Wilson*, that 'use of a defendant's coerced confession as substantive evidence of his guilt is never harmless error' (*Wilson*, 116 Ill. 2d at 41), cannot stand as a matter of federal constitutional law. That said, we conclude that *Fulminante* does not mandate that we abandon the rule in its entirety. Rather, we may recast the rule as follows: use of a defendant's *physically* coerced confession as substantive evidence of his guilt is never harmless error." (Emphasis in original.) *Id.* ¶ 71.

¶ 28    In light of this finding, the supreme court explicitly overruled its prior decision in *People v. Mahaffey*, 194 Ill. 2d 154 (2000), to the extent that the court had considered the overwhelming evidence of the defendant's guilt to conclude that the result of the defendant's trial would not have been different had his coerced confession been suppressed. *Wrice*, 2012 IL 111860, ¶ 75.

¶ 29    The supreme court held in the defendant's case:

> "Accordingly, we hold that harmless-error analysis is inapplicable to defendant's postconviction claim that his confession was the product of physical coercion by police officers at Area 2 headquarters. The *per se* rule in *Wilson*, as modified above, stands: use of a defendant's physically coerced confession as substantive evidence of his guilt is never harmless error. Defendant has satisfied the prejudice prong of the cause-and-prejudice test." *Id.* ¶ 84.

¶ 30    The supreme court clarified that this *per se* rule does not negate the requirements of the cause and prejudice test. "Thus, a bare assertion that the defendant's confession was physically coerced will not establish 'cause' for purposes of the cause-and-prejudice test, and the *per se* rule will never come into play." *Id.* ¶ 85. "In cases, such as the present one, where the defendant does satisfy both prongs of the cause-and-prejudice test, the defendant is yet required to establish the allegations set forth in his postconviction petition. Satisfaction of the test merely allows the petition to proceed; it does not relieve the defendant of his evidentiary burden in the postconviction proceeding." *Id.* The supreme court then remanded the case to the trial court for the appointment of counsel and second stage postconviction proceedings. *Id.* ¶ 90.

¶ 31    In *People v. Nicholas*, 2013 IL App (1st) 103202, the Third Division of this court applied the holding in *Wrice* to a successive postconviction petition. There, the defendant asserted that his confession was the result of physical coercion. Prior to trial, the defendant filed a motion to suppress statements, alleging that Detective James O'Brien, one of the detectives involved in the instant case, " 'smacked' " and "punched" him, and he was kicked by multiple police officers. The officers denied any brutality, and the motion was denied. *Id.* ¶¶ 4-9. Following a jury trial, the defendant was found guilty of first degree murder and attempted first degree murder. His conviction was affirmed on appeal, notably defendant did not challenge the denial of his motion to suppress statements on direct appeal. *Id.* ¶ 23.

¶ 32    In his initial *pro se* postconviction petition, the defendant alleged that the 2006 Report corroborated his claim that his confession was coerced and, absent the confession, the remaining evidence was insufficient to find him guilty beyond a reasonable doubt. *Id.* ¶ 24. The trial court summarily dismissed the defendant's petition, finding that the claim was forfeited because he did not raise the issue in his direct appeal. On appeal, his attorney filed a motion to withdraw under *Pennsylvania v. Finley*, 481 U.S. 551 (1987), asserting that there were no meritorious issues to be raised on appeal. The reviewing court found there were no meritorious issues to raise and affirmed the dismissal. *Nicholas*, 2013 IL App (1st) 103202, ¶ 25.

¶ 33    The defendant subsequently sought leave to file a successive postconviction petition, again arguing that his confession was coerced and that newly discovered evidence supported his claim as well as a claim of actual innocence. The trial court denied leave to file, finding that the defendant failed to satisfy the cause and prejudice test. *Id.* ¶ 27.

¶ 34    On appeal, the reviewing court analyzed *Wrice* and applied its holding to the defendant's claims. The court found that under *Wrice*, the defendant established prejudice because "[h]is claim of being beaten and the manner in which the alleged beating occurred are strikingly similar to the physical abuse documented in the 2006 Report as to the time period, location, manner, method, participants and the role of the participants in securing coerced statements from other prisoners in Areas 2 and 3." *Id.* ¶ 40. The court then found that the cause requirement was satisfied because his postconviction appellate counsel was ineffective for failing to argue the merits of his coercion claims and the defendant was never afforded a review of his claims. *Id.* ¶¶ 46-47. In the interest of justice, the court remanded the case for second stage proceedings and the appointment of counsel. *Id.* ¶ 47.

¶ 35    In the instant case, defendant's claims of a physically coerced confession have never been reviewed. His initial trial counsel filed a motion to suppress statements alleging physical abuse by detectives O'Brien and Halloran, but his subsequent private counsel withdrew the

motion. We acknowledge that defendant did not again raise the allegations of physical abuse on direct appeal or in his initial postconviction petition. In the latter, he argued that his attorney was ineffective for withdrawing the motion because his videotaped statement was obtained without *Miranda* warnings. The trial court denied defendant leave to file his successive postconviction petition, finding that this claim had already been raised in his initial postconviction petition. The court observed that even if the motion to suppress statements had been granted, the evidence of defendant's guilt was "still substantial." The court did not address defendant's supporting evidence of the TIRC reports for detectives O'Brien and Halloran, nor did it consider *Wrice* in its decision. The State fails to address *Wrice* in its brief on appeal. Rather, the State relies on *People v. Orange*, 195 Ill. 2d 437 (2001), to assert that the supreme court "addressed and rejected a claim that closely resembles the instant one." In *Orange*, the supreme court declined to find the cause and prejudice test satisfied after the defendant asserted that newly discovered evidence corroborated that his confession was physically coerced. *Id*. at 448-56. Significantly, the *Orange* court followed the holding in *People v. Mahaffey*, 194 Ill. 2d 154 (2000), in concluding that the defendant did not suffer any prejudice as a result of the claimed error. *Orange*, 195 Ill. 2d at 455-56. However, as we previously acknowledged, the Illinois Supreme Court in *Wrice* explicitly overruled *Mahaffey* to the extent that it suggested that a harmless error analysis was applicable for coerced confessions. See *Wrice*, 2012 IL 111860, ¶ 75. The State makes no attempt to distinguish or explain whether *Orange* remains precedential in light of the holding in *Wrice*.

¶ 36    It is uncontested that the TIRC report was released in 2012, which is after defendant's initial postconviction petition had been fully litigated. The database entries for detectives O'Brien and Halloran attached to defendant's petition contain 36 allegations between 1989 and 2002 against Detective O'Brien and 40 allegations between 1991 and 2002 against Detective Halloran. Significantly, the TIRC entries contain similar allegations of abuse, including being struck by a flashlight as well as having clothing removed, left in a cold room, and denied food. Because this newly discovered evidence was not available at the time of defendant's prior petitions, he has established the requisite cause, in that an objective factor impeded his ability to raise this claim at an earlier time.

¶ 37    We also find that defendant has satisfied the prejudice prong of the test because, as stated by the supreme court in *Wrice*, the "use of a defendant's *physically* coerced confession as substantive evidence of his guilt is never harmless error." (Emphasis in original.) *Id.* ¶ 71. At this stage of the proceedings, we must accept all well-pled facts as true. See *Pitsonbarger*, 205 Ill. 2d at 467. Defendant's successive postconviction petition contains facts that he was physically abused prior to giving his confession, and at this stage, we must accept those facts as true. Defendant's confession was introduced as substantive evidence at trial, and defendant has set forth claims that this confession was the result of physical coercion, including being struck with a flashlight, and stripped of his clothing and placed in a cold room. These allegations considered along with the newly discovered evidence from the TIRC report establish that defendant has satisfied the prejudice requirement such that his allegations of a physically coerced confession should proceed to the next stage of proceedings.

¶ 38    The remaining evidence at trial has no bearing on our consideration of the prejudice requirement. Under *Wrice*, our consideration of the prejudice prong cannot consider whether the evidence at the petitioner's trial overwhelmingly supported his guilt such that it was

- 8 -

unlikely the outcome of the proceedings would have been different had his physically coerced confession been suppressed. Accordingly, we reverse the trial court's denial of leave to file a successive postconviction petition and remand for second stage proceedings and the appointment of counsel.

¶ 39       Based on the foregoing reasons, we reverse the decision of the circuit court of Cook County and remand for further proceedings consistent with this decision.

¶ 40       Reversed and remanded.