# Illinois Official Reports

## Appellate Court

---

### *People v. Kraybill*, 2021 IL App (1st) 190621

---

| | |
|---|---|
| Appellate Court Caption | THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. DAVID KRAYBILL, Defendant-Appellant. |
| District & No. | First District, Sixth Division<br>No. 1-19-0621 |
| Filed<br>Rehearing denied | October 8, 2021<br>February 7, 2022 |
| Decision Under Review | Appeal from the Circuit Court of Cook County, No. 04-CR-10440; the Hon. Lauren Gottainer-Edidin, Judge, presiding. |
| Judgment | Affirmed. |
| Counsel on Appeal | James E. Chadd, Douglas R. Hoff, and Deepa Punjabi, of State Appellate Defender's Office, of Chicago, for appellant.<br><br>Kimberly M. Foxx, State's Attorney, of Chicago (John E. Nowak, Hareena Meghani-Wakely, and Andrew D. Yassan, Assistant State's Attorneys, of counsel), for the People. |
| Panel | JUSTICE HARRIS delivered the judgment of the court, with opinion.<br>Justices Mikva and Oden Johnson concurred in the judgment and opinion. |

**OPINION**

¶ 1        Defendant, David Kraybill, appeals the dismissal of his postconviction petition at the second stage. On appeal, defendant contends that the circuit court erred in dismissing his petition where he made a substantial showing that the suppression of a detective's written notes at his trial violated his due process rights. For the following reasons, we affirm.

¶ 2                                    I. JURISDICTION

¶ 3        The Cook County circuit court dismissed defendant's postconviction petition on February 15, 2019. Defendant filed his notice of appeal on March 11, 2019. Accordingly, this court has jurisdiction pursuant to Illinois Supreme Court Rule 651 (eff. July 1, 2017), governing appeals in postconviction proceedings.

¶ 4                                    II. BACKGROUND

¶ 5        Defendant was charged with first degree murder in the shooting death of Joel Cacharelis, his childhood friend. A complete recitation of the facts can be found in this court's opinion in *People v. Kraybill*, 2014 IL App (1st) 120232. We set forth below those facts relevant to this appeal.

¶ 6        On February 24, 2003, the doorbell rang at the Cacharelis home in Winnetka, Illinois. Joel's mother, Charlotte, came out of her second-floor bedroom, but before she could answer the door, she saw defendant coming up the stairs. He walked toward Joel's room. About 10 minutes later, Charlotte heard defendant and Joel leave the house. She assumed they left through the back door, which was near where Joel parked his Mercury Cougar. Charlotte went to bed around 10:30 p.m. Neither Joel nor defendant had returned to the house by that time.

¶ 7        Around 11:09 p.m. that night, Heidi Lubin was driving northbound on Forestway Drive in Winnetka. She swerved to avoid hitting what she thought was a body in the road. She swerved a second time when she spotted a pair of gloves. After arriving home, she called the police.

¶ 8        When police arrived at the scene, they saw Cacharelis's body in the road with bullet wounds to the back of his head. They also found seven .22-caliber shell casings. Nearby, they found a pair of leather gloves, and inside each was a purple nitrile glove similar to those worn by health professionals when they conduct medical examinations. A garbage can near the area contained three additional .22-caliber shell casings. Detectives observed distinct footwear impressions left in the snow near the garbage can. They found the same footwear impressions outside the Cacharelis home.

¶ 9        Defendant's girlfriend, Jennifer Heggesta, testified that on February 23, 2003, she and defendant went to a hospital in Madison, Wisconsin, where her mother had just been admitted. She recalled seeing purple latex examination gloves in open boxes in her mother's room but did not see defendant take any gloves. Heggesta stayed at the hospital while defendant returned home. When she got home around 9 p.m., she did not see defendant's car, and he was not there. She went to sleep, and upon waking the next morning, she saw defendant sleeping in his bed. Heggesta testified that defendant owned a pair of leather gloves very similar to the ones found on the road next to Cacharelis's body. However, she had not seen him wear the gloves for several years.

¶ 10	In conducting a search of defendant's home, police found an owner's manual for a Beretta pistol. Although a handgun was not recovered, police did find accessories used with a .22-caliber handgun including a silencer. A receipt showed that defendant purchased a .22-caliber Beretta and a silencer on April 21, 1999. An expert in firearm examinations testified that all the shell casings found at the crime scene came from a .22-caliber weapon and that the Beretta model owned by defendant was capable of discharging those bullets.

¶ 11	An expert in footwear impressions examined photographs of prints found at the scene and at the Cacharelis home. He concluded that the same shoe made the impressions. The expert measured defendant's feet and found his foot size comparable with the general dimensions of the impressions left at the scene and at the house. A forensic scientist examined the leather gloves and found a full DNA match with defendant. Analysts tested fingerprints recovered from Joel's vehicle, and one of the fingerprints matched the print of defendant's right middle finger.

¶ 12	During the investigation, Sergeant James Christensen interviewed defendant several times. On March 5, 2003, defendant told Christensen that Cacharelis "was manipulative, egocentric and cared for no one other than his own self." He also said "you and I both know that at some point I'm going to have to face charges in Illinois." On March 11, 2003, defendant learned that his DNA was found in the car and at the murder scene. He told Christensen that "perhaps the offender brought along a pistol for nothing more than his own personal protection." He continued, "If I tell you guys everything, I want to tell you *** I don't know if I'm ready to make that leap of faith to tell you guys everything and to spend the rest of my life in jail." When he learned that shell casings were recovered, defendant stated, "Joel was selfish." He also said, "it's hard for me to give you guys the whole pie. I might be able to give you a piece of the pie, but I think you guys are going to find out the truth." Christensen stated that he did not record or memorialize defendant's statements as he made them but that after each conversation he and his partner would take written notes. He destroyed these notes after he used them to write his police report. Defendant was arrested in Wisconsin on February 20, 2004.

¶ 13	Prior to trial, the State filed a motion *in limine* seeking to preclude defendant from discussing a tape-recorded conversation he had with Christensen on February 21, 2004. The State argued that the recording was hearsay. Defendant, however, argued that the 2004 conversation was relevant because, in it, he explained the meaning of his 2003 statements. He claimed that he denied telling Christensen in 2003 that (1) he would face charges in Illinois, (2) he would give police a "piece of the pie," and (3) he did not know if he was ready to tell police everything and spend the rest of his life in jail. The trial court granted the State's motion but noted that the recording could be admitted if defendant took the stand and denied making the earlier statements. Defendant did not testify at trial.

¶ 14	After closing arguments, the jury found defendant guilty of first degree murder. The jury also found that defendant discharged a firearm proximately causing the death of another person. The trial court sentenced him to 65 years' imprisonment.

¶ 15	In January 2012, defendant filed his appeal. Therein, he argued that his conviction should be reversed where the trial court erroneously precluded (1) evidence of Cacharelis's criminal activities, (2) cross-examination of Christensen regarding the destruction of his 2003 interview notes in violation of section 114-13(b) of the Code of Criminal Procedure of 1963 (Code) (725 ILCS 5/114-13(b) (West 2004)), and (3) the 2004 recorded conversation between Christensen

and defendant. The transcript of the 2004 recorded conversation between defendant and Christensen was included in the record on appeal. He also argued that it was error for the court to admit photographs of collector coins and evidence of a .22-caliber silencer found in his house.

¶ 16 Relevant here, the appellate court found no error in precluding defense counsel from cross-examining Christensen because there was no proof that the written notes existed or were destroyed after November 2003, the effective date of the law requiring preservation of such notes. *Kraybill*, 2014 IL App (1st) 120232, ¶¶ 59-60. Nothing in the record established a violation of section 114-13(b). *Id.* ¶ 60. The court also noted that defendant "sought to elicit testimony regarding a 2004 conversation he had with Christensen ostensibly to show that Christensen destroyed notes of his conversations with [defendant]." *Id.* Defendant, however, failed to sufficiently explain how that testimony would discredit Christensen or reveal his bias. *Id.* The State had suggested that the "notes" Christensen referred to in the 2004 interview were actually his police report.

¶ 17 Furthermore, preclusion of the 2004 recording was proper on other grounds. First, defendant's statements in the recording constituted inadmissible hearsay. *Id.* ¶ 63. The court reasoned that defendant's statements in the recording did not put his prior statements in context or explain his prior statements. Instead, "they were merely contradictory statements attempting to bolster his defense." *Id.* Self-serving statements are inadmissible hearsay because their relevance depends on the truth of the matter asserted. *Id.* ¶ 62. Second, the completeness doctrine did not apply to the 2004 recording where the statements therein occurred "during an entirely different interview." *Id.* ¶ 65. Third, Illinois Rule of Evidence 106 (eff. Jan. 1, 2011) was inapplicable. Defendant sought to admit his statements in the 2004 recording under the rule to explain the oral statements he made in 2003. However, because Rule 106 requires the prior admission of a writing or recorded statement and no written or recorded statements from the 2003 interviews were introduced at trial, Rule 106 did not apply. *Kraybill*, 2014 IL App (1st) 120232, ¶ 65. For these reasons, the court held it was not error to exclude the 2004 recording from the evidence.

¶ 18 On June 23, 2015, defendant filed a postconviction petition, which was advanced to the second stage. Pertinent to this appeal, defendant claimed that he possessed new evidence showing Sergeant Christensen had lied about destroying his notes in 2003 shortly after having those conversations with defendant. In his affidavit, defendant asserted that, when Christensen interviewed him in 2004, Christensen "occasionally referred to papers in his possession." Defendant further stated that he was "physically able to see Sergeant Christensen refer to these papers." He knew that they were not police reports because he was "familiar with police reports." While speaking to defendant, Christensen said that he wanted to go through his "notes," and he "explained that the notes he was referring to were the notes he wrote down from the last time he and I met." Furthermore, had the State submitted the notes in discovery, the 2004 recordings would have been admissible at trial under Rule 106. Defendant could have used the recording to clarify his 2003 statements. Defendant claimed that he was prejudiced by the lack of access to the 2003 notes during trial and in his direct appeal.

¶ 19 The State filed a motion to dismiss defendant's postconviction petition. The State argued that defendant's claims were barred by *res judicata* and forfeiture. The circuit court granted the motion, finding that defendant had not made a substantial showing of a constitutional

- 4 -

violation and "[t]here really isn't any newly discovered evidence." The court also found defendant's claims barred as *res judicata*.

¶ 20    Defendant filed this appeal.

¶ 21                                    III. ANALYSIS

¶ 22    The Post-Conviction Hearing Act (Act) (725 ILCS 5/122-1 *et seq.* (West 2018)) provides a procedure in which a defendant can claim that his conviction was the result of a substantial denial of his rights under the United States Constitution or the Illinois Constitution or both. *People v. Cathey*, 2012 IL 111746, ¶ 17. The Act provides a three-stage process for non-death-penalty cases. *People v. Jones*, 213 Ill. 2d 498, 503 (2004). At the first stage, the circuit court must review the postconviction petition and determine whether "the petition is frivolous or is patently without merit." 725 ILCS 5/122-2.1(a)(2) (West 2018). If the petition is not dismissed at the first stage, it advances to the second stage. *Id.* § 122-2.1(b).

¶ 23    At the second stage, the State may file an answer or move to dismiss the petition. *Id.* § 122-5. If the State files a motion to dismiss, the court must rule on the legal sufficiency of defendant's allegations, taking all well-pleaded facts as true. *People v. Johnson*, 205 Ill. 2d 381, 389 (2002). A petition may be dismissed at the second stage only when the allegations in the petition, liberally construed in light of the trial record, fail to make a substantial showing of a constitutional violation. *People v. Hall*, 217 Ill. 2d 324, 334 (2005). Here, the State filed a motion to dismiss, and the circuit court granted the motion. The dismissal of a petition without an evidentiary hearing is reviewed *de novo*. *Id.*

¶ 24    On appeal, defendant claims that he has new evidence showing that Christensen did not actually destroy his notes in 2003, as he had testified at trial. Defendant contends that, if the notes were known to exist during his trial, he would have been allowed to admit the 2004 recording in which he explained his statements in 2003. The notes also would have allowed defense counsel to cross-examine Christensen and impeach his testimony that he had destroyed his notes in 2003. Defendant claims that the new evidence supports a substantial violation of his due process rights.

¶ 25    The State argues, and the circuit court found, that *res judicata* applied to bar defendant's claims. The issue of Christensen's alleged destruction of his notes in 2003 was raised by the parties at trial and on direct appeal, and this court considered the issue on direct appeal. The court also considered Christensen's statements in the 2004 interview, and a transcript of the recording was included in the appellate record. "The purpose of a postconviction proceeding is to permit inquiry into constitutional issues involved in the original conviction and sentence that were not, and could not have been, adjudicated previously on direct appeal." *People v. English*, 2013 IL 112890, ¶ 22. Therefore, issues raised and decided on direct appeal are barred by *res judicata*, and issues that could have been raised, but were not, are forfeited. *People v. Ligon*, 239 Ill. 2d 94, 103 (2010).

¶ 26    In the interests of fundamental fairness, however, courts have recognized that *res judicata* can be relaxed in light of substantial new evidence. *People v. Patterson*, 192 Ill. 2d 93, 139 (2000). The analysis used for determining whether new evidence may relax the application of *res judicata* is the same as that used to determine whether newly discovered evidence requires a new trial. See *id.* Thus, to relax the application of *res judicata*, new evidence (1) must be of such conclusive character that it will probably change the result upon retrial, (2) must be material and not merely cumulative, and (3) " 'must have been discovered since the trial and

be of such character that it could not have been discovered prior to trial by the exercise of due diligence.' " (Internal quotation marks omitted.) *Id.* (quoting *People v. Molstad*, 101 Ill. 2d 128, 134 (1984)).

¶ 27 The new evidence defendant refers to is his observation that Christensen "occasionally referred to papers in his possession" when he interviewed defendant in 2004. Defendant asserted that he was "physically able to see Sergeant Christensen refer to these papers." According to defendant's affidavit, Christensen said he wanted to go through his "notes" and "explained that the notes he was referring to were the notes he wrote down from the last time he and I met." Defendant knew the notes were not police reports because he was "familiar with police reports."

¶ 28 This evidence was not discovered since defendant's trial, nor was it of such a character that it could not have been discovered prior to trial by the exercise of due diligence. Defendant's statements in his affidavit confirmed that he knew of these "papers" when he had the conversation with Christensen in 2004. Defendant's trial took place in 2011, and he filed his direct appeal in 2012. One of the main issues at trial and on direct appeal was Christensen's destruction of his notes in 2003 and whether he violated section 114-13(b) of the Code. Defendant also argued on direct appeal that the 2004 recording was relevant to show that Christensen improperly destroyed his notes in 2003. A transcript of the interview was in the record on appeal.

¶ 29 Although defendant was clearly aware of the 2004 conversation he had with Christensen at the time of his trial and on direct appeal, he never mentioned his observations of Christensen's papers. Defendant provides no explanation for why he did not raise this issue in an earlier proceeding. Therefore, we must find that defendant's affidavit does not constitute new evidence. See *People v. Robinson*, 2020 IL 123849, ¶ 53 (finding that, if the affidavit demonstrates the information contained therein was known to defendant prior to trial, it is not newly discovered evidence). Accordingly, we find no error in the circuit court's dismissal of defendant's postconviction petition where defendant has not presented new evidence to relax the application of *res judicata*.

¶ 30 On appeal, defendant also claims the failure to turn over these notes violated his constitutional rights pursuant to *Brady v. Maryland*, 373 U.S. 83 (1963), and *Arizona v. Youngblood*, 488 U.S. 51 (1988). We note that defendant's postconviction petition did not raise *Brady* or *Youngblood* claims. Any claim by defendant that he was denied a substantial constitutional right is forfeited if not raised in the original or amended petition. *People v. Pendleton*, 223 Ill. 2d 458, 475 (2006). In any event, defendant's *Brady* and *Youngblood* claims on appeal are based on the alleged existence of Christensen's notes after November 2003. The trial court and this court on direct appeal considered that issue. Thus, the doctrine of *res judicata* applies, and as we found above, defendant has presented no new evidence to relax the application of *res judicata*. See *People v. Hobley*, 182 Ill. 2d 404, 437-38 (1998) (finding that *res judicata* applies to *Brady* claims in postconviction proceedings unless the information upon which they are based was discovered after trial and not made part of the record on direct appeal).

¶ 31                              IV. CONCLUSION

¶ 32            For the foregoing reasons, the judgment of the circuit court is affirmed.

¶ 33            Affirmed.