2023 IL App (1st) 210366-U

No. 1-21-0366

Order filed March 31, 2023

FIFTH DIVISION

**NOTICE:** This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

IN THE
APPELLATE COURT OF ILLINOIS
FIRST JUDICIAL DISTRICT

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellee, | ) | Cook County. |
| | ) | |
| v. | ) | No. 03 CR 21971 (01) |
| | ) | |
| ANDREW REED, | ) | Honorable |
| | ) | Arthur F. Hill, |
| Defendant-Appellant. | ) | Judge presiding. |

JUSTICE MITCHELL delivered the judgment of the court.
Presiding Justice Delort and Justice Lyle concurred in the judgment.

**ORDER**

¶ 1    *Held*: We affirm the circuit court's order denying leave to file a successive post-conviction petition where defendant failed to raise a colorable claim of actual innocence and failed to satisfy cause and prejudice related to the destruction of evidence.

¶ 2    Defendant Andrew Reed appeals the circuit court's order denying his motion for leave to file a successive post-conviction petition. Reed argues that the circuit court erred in denying leave to file because he sufficiently raised a claim of actual innocence and established cause and prejudice in his failure to previously assert a claim for a *Brady* violation. For the reasons explained below, we affirm.

¶ 3                                    BACKGROUND

¶ 4     In September 2003, Andrew Reed fired a gun at a group of people sitting on a porch, resulting in the death of one individual and a gunshot wound to another. After officers arrived on scene, a witness pointed officers to Reed's mother's house. While officers were at the house, Reed called his mother but refused to speak to officers. The officers determined that the phone call originated from 7213 South Evans Avenue in Chicago and proceeded to that location.[1] Upon arrival, officers knocked on the door and then arrested Reed as he attempted to escape out of the back door. Reed confessed, stating that he was angry because he believed some individuals in the group had burglarized his brother-in-law's home. Eyewitnesses also identified Reed as the assailant. After a bench trial, Reed was convicted of first-degree murder and aggravated battery. The court sentenced Reed to 56 years in prison. On direct appeal, we affirmed. *People v. Reed*, 378 Ill. App. 3d 1123 (2008) (table) (unpublished order under Illinois Supreme Court Rule 23).

¶ 5     Reed filed a *pro se* post-conviction petition in January 2009, which the circuit court summarily dismissed as frivolous and patently without merit. 725 ILCS 5/122-1 *et seq.* (West 2008). Reed moved to amend his petition and to reconsider the dismissal, both of which the circuit court denied. We affirmed the dismissal. *People v. Reed*, 402 Ill. App. 3d 1190 (2010) (table) (unpublished order under Illinois Supreme Court Rule 23). In 2010, Reed moved for leave to file a successive post-conviction petition based on his actual innocence. The circuit court denied leave, and we affirmed. *People v. Reed*, 2012 IL App (1st) 110410-U.

¶ 6     In 2013, Reed filed a motion for DNA testing pursuant to section 116-3 of the Code of

---

[1]   The 2016 circuit court order states that Reed fled to Indiana and was subsequently arrested. However, the arrest report lists the address of arrest as 7213 South Evans Avenue.

Criminal Procedure, which the circuit court granted. 725 ILCS 5/116-3 (West 2012). A Chicago forensic science center tested DNA on a sweatshirt recovered from the apartment where police arrested Reed. The test concluded that Reed could not be excluded as a possible source of the DNA. In 2015, Reed filed another motion for DNA testing, requesting that the DNA be run through a DNA database search. 725 ILCS 5/116-5 (West 2014). The circuit court denied the motion, and we affirmed. *People v. Reed*, No. 1-16-0233 (2017) (unpublished summary order under Illinois Supreme Court Rule 23(c)). Later that same year, Reed moved for leave to file another successive post-conviction petition, asserting his actual innocence and a *Brady* violation. *Brady v. Maryland*, 373 U.S. 83 (1963). As part of this motion, Reed cited forensic scientist Kelli Dorris's reports in which she described decontaminating an "apparent blood spot" located "under the slide catch" of the gun that police discovered inside the South Evans Avenue apartment. The circuit court denied leave to file the successive post-conviction petition, and we affirmed. *People v. Reed*, No. 1-16-1591 (2018) (unpublished summary order under Illinois Supreme Court Rule 23(c)). In 2017, Reed filed a motion for DNA testing of the red spot on the gun (725 ILCS 5/116-3 (West 2016)), which the circuit court dismissed after the State submitted affidavits establishing that testing was impossible because Dorris washed the stain before conducting ballistics tests.

¶ 7   In 2020, Reed filed his latest motion for leave to file a successive post-conviction petition alleging his actual innocence and a due process violation based on the State's destruction of the red stain. Reed attached to his petition Kelli Dorris's and her supervisor Peter Brennan's affidavits. The circuit court concluded that Reed's claims were barred by *res judicata* and also failed on the merits. The circuit court reasoned that Reed's claim of a due process violation was speculative because the red spot on the gun may not have been blood, may not have been human blood, and

may not have been large enough to produce a DNA match. Moreover, Reed failed to show that the red spot was destroyed in bad faith. The court denied Reed's motion and this timely appeal followed. Ill. S. Ct. R. 651(a) (eff. July 1, 2017).

¶ 8                                             ANALYSIS

¶ 9                                        A. Actual Innocence

¶ 10    Reed argues first that the circuit court erred in denying his motion for leave to file a successive petition for post-conviction relief because he raised a colorable claim of actual innocence. We review the denial of leave to file a successive post-conviction petition alleging actual innocence *de novo*. *People v. Robinson*, 2020 IL 123849, ¶ 40.

¶ 11    The Post-Conviction Hearing Act provides a statutory remedy to criminal defendants who assert claims for substantial violations of their constitutional rights at trial. 725 ILCS 5/122-1 *et seq.* (West 2020). Section 122-3 of the Act provides that any claim of substantial denial of constitutional rights not raised in the original or an amended petition is waived. 725 ILCS 5/122-3. A ruling on an initial post-conviction petition has *res judicata* effect with respect to all claims that were raised or could have been raised in the initial petition. *People v. Jones,* 191 Ill. 2d 354, 358 (2000). However, a defendant is not barred "from raising multiple claims of actual innocence where each claim is supported by newly discovered evidence." *People v. Ortiz,* 235 Ill. 2d 319, 333 (2009). Newly discovered evidence is evidence discovered after trial that could not been discovered earlier through due diligence. *Id.* at 333-34.

¶ 12    Reed asserts that the affidavits from lab analysts Kelli Dorris and Peter Brennan are newly discovered and that the contents were not known in previous post-conviction proceedings. The affidavits attest to the fact that Dorris noted "a spot of apparent blood" on the firearm in her initial

examination. However, not only was the information about the apparent blood spot discoverable in prior post-conviction proceedings, but Reed used the same information contained in the affidavits to support his 2015 post-conviction petition. Reed cited Dorris's original lab reports in which she noted her observation of an apparent blood spot that she later decontaminated. That the affidavits are new does not negate the fact that Reed knew about the firearm reports and the destruction of the red spot in 2015. See, *e.g.*, *People v. Wideman*, 2016 IL App (1st) 123092, ¶ 53 (the defendant's affidavit could not be considered newly discovered when he failed to explain why the affidavit could not have been submitted in earlier petitions). Because Reed used this evidence in his prior petition to support another claim, the affidavits cannot be considered newly discovered evidence of his actual innocence. See *People v. Orange*, 195 Ill. 2d 437, 450 (2001), *holding modified by People v. Pitsonbarger*, 205 Ill. 2d 444 (2002) (dismissal of defendant's successive post-conviction petition was proper when the purported newly discovered evidence was used in support of defendant's first post-conviction petition).

¶ 13     Even if the evidence were newly discovered, the evidence must also be material and not cumulative. *People v. Kraybill*, 2021 IL App (1st) 190621, ¶ 26. Evidence is materially relevant if it "tends to significantly advance" the claim of innocence. *Robinson,* 2020 IL 123849, ¶ 55. Evidence is noncumulative if it adds to what the jury heard. *People v. Coleman,* 2013 IL 113307, ¶ 96. The affidavits regarding the existence of a red spot on the firearm cannot be categorized as material and noncumulative. Reed confessed to the crime shortly after his arrest. Moreover, two witnesses at trial testified to seeing Reed at the scene and believed that he had a gun. A red spot on the gun that was never tested cannot be said to significantly advance the claim of Reed's innocence. The assertion that if the red spot had been tested, it would have identified the

real shooter, is speculative.

¶ 14    Finally, the evidence must be so conclusive that it would "probably change the result on retrial." *Ortiz*, 235 Ill. 2d at 333. The ultimate question is whether the evidence "places the trial evidence in a different light and undermines the court's confidence in the judgment of guilt." *People v. Robinson*, 2020 IL 123849, ¶ 56. Reed has not satisfied this element. Any conclusions made about the affidavits and the red spot are speculative. We cannot definitively say that the red spot was blood; if it were, that it belonged to the shooter; and, if it was tested, that it would have not belonged to Reed. Reed's assertion that the red spot would have weakened the State's case is a claim based on a series of hypotheticals and does not approach being conclusive. See, *e.g.*, *People v. Allen*, 377 Ill. App. 3d 938, 944 (2007) ("The absence of defendant's DNA on the gun would not conclusively establish *** that he did not commit the *** robbery" where there was positive eyewitness testimony linking defendant to the offense); *People v. Rivera*, 2011 IL App (2d) 091060, ¶ 31 ("DNA evidence [that] does not match defendant's DNA does not exonerate defendant" because DNA evidence does not trump all other evidence).

¶ 15                                 B. Due Process Violation

¶ 16    Reed next argues the State committed a due process violation and that the circuit court erred in denying his motion for leave to file the successive post-conviction petition. In order for the court to grant leave to file a successive post-conviction petition, the defendant must establish cause and prejudice for failing to raise the claim in his original petition. *People v. Simpson*, 204 Ill. 2d 536, 552 (2001). To show cause, the defendant must identify an objective factor that impeded his ability to raise a specific claim during his initial post-conviction proceedings. 725 ILCS 5/122-1(f) (West 2020); *People v. Bailey*, 2017 IL 121450, ¶ 14. The defendant

shows prejudice by demonstrating that the claim not previously raised in his initial post-conviction proceedings "so infected the trial that the resulting conviction or sentence violated due process." 725 ILCS 5/122-1(f); *Bailey*, 2017 IL 121450, ¶ 14.

¶ 17    Reed argues that he did not discover the State's destruction of the red spot on the gun until 2019, when the State submitted affidavits in support of its motion to dismiss Reed's petition for further DNA testing. But, as explained above, Reed relied on this same evidence in his 2015 post-conviction petition, also in support of a due process claim. In that petition, Reed argued that the State failed to turn over Kelli Dorris's reports in which she described her observation and decontamination of the red spot. Reed's claim cannot be classified as different merely because the evidence is now supported by additional affidavits recounting the same information. *People v. Green,* 2012 IL App (4th) 101034, ¶ 40 (the defendant failed to show cause and prejudice by supporting a claim raised in a prior post-conviction petition with additional evidence). Reed's claim that the evidence was destroyed in violation of Reed's due process rights could have been, and was, raised in an earlier proceeding. *Orange*, 195 Ill. 2d at 450 (the defendant failed to show cause because the proffered evidence was already submitted in a previous post-conviction petition in support of essentially the same claim).

¶ 18    Further, Reed cannot establish prejudice. The State violates a defendant's due process rights under *Brady* by failing to disclose favorable evidence that is material to guilt or punishment, "irrespective of the good faith or bad faith of the prosecution." *Brady*, 373 U.S. at 87. Where the State has failed to preserve *potentially* exculpatory evidence, a defendant must show that the loss or destruction of the evidence resulted from the State's "bad faith" to establish a due process violation. *Arizona v. Youngblood*, 488 U.S. 51, 57-58 (1988). In *Youngblood*, the potential value

of the unpreserved DNA samples recovered from a sexual assault victim's clothing was clear: had they been capable of testing and not matched the defendant's DNA, the information would have advanced his defense at trial that the victim had erred in identifying the defendant as the assailant. *Id.* at 54. Because the defendant had not shown that the state acted in bad faith, however, the Court held that the defendant's due process rights were not violated. *Id.* at 58 (limiting due process violations arising from the "failure to preserve potentially useful evidence" to "those cases in which the police themselves by their conduct indicate that the evidence could form a basis for exonerating the defendant").

¶ 19    Here, in contrast, the import of the unpreserved spot is unclear: the fact that the State used bleach to decontaminate the gun prior to conducting ballistics testing is not in and of itself exculpatory information. Nor is the information material to Reed's guilt considering that the State's case-in-chief relied, in no part, on DNA evidence or the gun. The State was barred from using evidence related to the gun after the trial court granted Reed's motion to suppress, and his conviction was based on his confession and the testimony of witnesses who identified him as the shooter. While Reed refers to the red spot definitively as "blood" and "genetic evidence," that is unknown. His argument that testing might have revealed the true shooter's identity or contradicted the State's evidence is speculation. Reed also did not allege any facts showing that the State, by cleaning the gun, acted nefariously or deviated from its standard procedures for ballistics testing. On the contrary, the State's forensic scientists, Dorris and Brennan, averred to decontaminating the gun so that it was safe for further examination. Accordingly, we affirm the circuit court's order denying Reed leave to file his successive post-conviction petition.

¶ 20                                    CONCLUSION

¶ 21    For the reasons explained above, we affirm the circuit court's judgment.

¶ 22    Affirmed.